## Elliott *versus* The City of Philadelphia.

1. A servant was driving his master's horse on a street of a city faster than was permitted by the ordinance ; he and the horse were taken into custody by the police, by negligence the horse escaped and was killed.  *Held*, that the city was not responsible for the negligence of the police.

2. In order to charge a municipal corporation for negligence in the performance of a public work, the law must have imposed a duty on it so as to make the neglect culpable.   Per THAYER, J.

3. The officers of a city are *quasi* civil officers of the government although appointed by the corporation.   *Id.*

4. Where a city only authorizes a lawful act to be done in a lawful manner, it is not responsible for acts of its officers outside of the authority.   *Id.*

5. Philadelphia *v.* Gilmartin, 21 P. F. Smith 140, distinguished.

February 25th 1874.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the District Court of *Philadelphia:* No. 71, to January Term 1870.

This was an action on the case brought February 17th 1869, by William B. Elliott against the city of Philadelphia, for the arrest by her police officers of the plaintiff's servant for fast driving, taking his horse into custody, and permitting it to run away and be killed.

The declaration contained four counts, averring the facts in different forms; they are sufficiently stated in the opinion of Judge Thayer.   The defendants demurred to the declaration.

The following opinion was delivered July 3d 1869, by Judge Thayer in deciding the demurrer:—

"Demurrer to the plaintiff's declaration:   The first count charges, that on the 14th of February 1869, while the plaintiff's servant was driving his horse and carriage along Broad street, the defendants, by certain police officers in their employ, arrested the servant for reckless and furious driving, and took the horse and carriage out of the possession of the servant, and, that, whereas, it thereupon became the duty of the defendants to keep the said horse and carriage with due diligence, and to take proper care of the same, yet the defendants, by their servants, the said police

[Elliott *v.* City of Philadelphia.]

officers, did not keep the horse and carriage with due diligence and take proper care of the same, but on the contrary, so negligently controlled and took care of the same, that through the negligence of the said police officers, the horse escaped, and ran away and was killed, and the carriage was greatly broken and injured. By means of which the horse was lost to the plaintiff, and he was put to great expense in repairing the carriage.

" The second count contains the same averments, with the addition, that the police officers were instructed and commanded by the defendants to arrest all persons who should be driving along Broad street at an immoderate gait, and that the plaintiff's servant was arrested by the police officers while acting in obedience to said instructions and commands.

" The third count avers, that the plaintiff's servant was wrongfully arrested while driving the horse and carriage at a moderate and usual rate of speed, the police officers making the arrest falsely alleging and charging that the servant was driving at an immoderate gait, that the police officers wrongfully took the horse and carriage out of the possession of the plaintiff's servant. By means whereof, the horse was lost to the plaintiff, and he incurred great expense in repairing the carriage.

" The fourth count does not differ materially from the third.

" The defendants have demurred to all the counts.

" Two questions are raised by the pleadings :—

" First. Is the city responsible for the negligence of the police officers, in not taking proper care of the horse and carriage, when they arrested the driver for immoderate driving ?

" Second. Is the city responsible for a false arrest by the police officers, resulting in the loss of the plaintiff's horse and injury to his carriage?

" It is unnecessary to enter into any discussion of the second question, inasmuch as we regard it as settled adversely to the plaintiff, by the case of Fox *v.* The Northern Liberties, 3 W. & S. 103. In that case, one Hillman, who was superintendent of police, illegally seized the plaintiff's horse, pretending that the plaintiff was violating the ordinances of the district of Kensington, and the plaintiff brought his action against the district to recover damages for the tort. But the Supreme Court held that the action could not be maintained against the defendants. 'It is not conceivable,' says Kennedy, J., 'how any blame can be fastened upon a municipal corporation, because its officer, who is appointed or elected, for the purpose of causing to be observed and carried into effect the ordinances duly passed by the corporation for its police, either mistakenly or wilfully, under color of his office, commits a trespass; for in such a case it cannot be said that the officer acts under any authority given to him, either directly or indirectly, by the corporation, but must be regarded as having done the tres-

[Elliott v. City of Philadelphia.]

pass of his own will, and he alone must be looked to for compensation by the party injured. It is like the familiar case of master and servant; where the latter wilfully does an act without the consent or authority of the master, by which a third person is injured, the servant alone is answerable.'

"In regard then, to the first question. The arrest of the plaintiff's servant, charged in the first two counts, must be taken, we think, to have been a lawful arrest for a breach of the peace: U. S. v. Hart, 1 Peters C. C. 390. If it was not a lawful arrest, the plaintiff's case is within the decision already referred to. Are the defendants then responsible for the neglect or misfeasance of the police officers in not taking proper care of the horse and carriage? By the Consolidation Act, February 2d 1854, sect. 9, the city councils are to fix the whole number of policemen and watchmen for the service of the whole city, and the mayor is to nominate, and by and with the advice and consent of the select council, appoint the policemen and watchmen. By sect. 42, the select and common councils of the city are authorized and directed to organize a police department in and for the said city. They are also to ordain and establish all needful laws and ordinances for the preservation of the public peace. By sect. 7, the police officers and watchmen are to receive a compensation, to be fixed by ordinance of councils. It is contended that in making the arrest, the police officers were the agents and servants of the city, and that the city is, therefore, liable for the misfeasance or negligence of the officers, in the same manner that a private corporation would be liable for the misfeasance or neglect of its agents and officers. Many cases have, undoubtedly, been decided, in which it has been held, that municipal corporations are liable for the neglect of their agents, in not doing what it was the duty of the corporation by law to do, and in doing that amiss which the corporation was authorized or enjoined by law to do. Thus they have been held liable for the neglect of their officers, in not repairing highways and streets, Dean v. New Milford Township, 5 W. & S. 545; Erie City v. Schwingle, 10 Harris 384; for negligent grading of streets, Kensington v. Wood, 10 Barr 93; for allowing a city wharf to be obstructed, Pittsburgh v. Grier, 10 Harris 55; for unskilfulness in constructing a dam, Mayor of New York v. Bailey, 2 Denio 433; for negligent construction of a sewer, Delmonico v. New York, 1 Sandf. 223; Lloyd v. The Mayor, 1 Seld. 369; White Lead Co. v. Rochester, 3 Comst. 463. In order to charge a corporation for negligence in the performance of a public work, the law must have imposed a duty on it so as to make that neglect culpable. The cases in which this responsibility has been held to exist, are confined, so far as I am informed, to cases of public works. In the omission to perform these altogether, where the performance was imposed by law, the omission was clearly that of the municipality. The fact of non-performance by anybody,

[Elliott *v.* City of Philadelphia.]

itself and alone, proved the neglect of the municipality. In regard to the cases of negligent performance or misfeasance in the construction of public works, it is perhaps difficult to distinguish the principles upon which those cases proceed from that which the plaintiff asks to have applied in the present case. If the plaintiff fails, it will be owing, not to the unsoundness of the principle upon which he relies, or to any defect in the abstract analogies existing between the cases he cites and the case he prosecutes, but rather to the fact, that the law has imposed a just limit to the application of the principle he invokes, and has confined its application within certain just and reasonable bounds. A municipal body is bound by law to execute a particular work. It is reasonable to suppose that they have such opportunities for the constant supervision of the work, and such constant control of their agents, that they should be responsible for the manner in which the work is done. It is unquestionably the duty of the municipal authorities of Philadelphia to preserve the public peace. It is for this purpose they employ police officers and other agents. But will any one say, that it is equally reasonable to hold the municipality responsible for the acts of these officers in the discharge of their varied duties, in controlling persons and things, as it is to hold it responsible for the manner of executing a public improvement? of grading a street or building a sewer? It is quite practicable to give particular instructions for the performance of a public work and to see that they are complied with. Is it possible to give particular instructions to police officers in regard to what they shall do in every case, and under all possible circumstances which may arise in the discharge of their various and complicated duties? Duties which depend upon circumstances which are infinitely varied, and which it is impossible to foresee? In the execution of a public work, nothing need be left to the discretion of the agent. Can the same be said in regard to the functions which are delegated by a municipal government to the police officers? Accordingly, it has been held that a municipal corporation authorized to make ordinances for the good government of its streets and citizens, is not responsible for injuries arising from their neglect or violation: Levy *v.* New York, 1 Sand. 464. In Alcorn *v.* The City of Philadelphia, 8 Wright 348, it was held, that the city is not responsible for damages resulting from negligence of a district surveyor in locating the line of certain lots, by reason of which a lot-holder was compelled to rebuild his house. That decision is made to rest, in some measure, upon the consideration, that the surveyor was an officer elected by the people and not subject to removal by the corporation. If this distinction is of importance, it is equally true in the present case, that although the policemen themselves are appointed, the mayor and select council who appoint them, and upon whom rests the responsibility of appointing fit persons, are also elected by

[Elliott *v.* City of Philadelphia.]

the people; that is, they are—like the district surveyor—elected by the corporators, and the district surveyor and the survey department, like the police officers and the police department, are regulated by the city councils: Act May 13th 1856, sect. 14.

"No one supposes that the city of Philadelphia could, without the Act of May 31st 1841, be made responsible for the negligence of its officers in not suppressing a riot. Yet if the liability of a municipal corporation for the negligence of its police officers is to be adopted as a rule without limitation, it must be held responsible for the consequences of a riot attributable to such negligence, in cases where no such responsibility is expressly imposed by statute. That a municipal corporation in the absence of such a statutory regulation, is not responsible, was directly ruled by the Court of Appeals of Kentucky, in Prather *v.* City of Lexington, 13 B. Monroe 559, and the reasoning of the court in that case seems to be very applicable to the present case. 'Where,' says Simpson, J., 'a particular act operating injuriously to an individual, is authorized by a municipal corporation by a delegation of power, either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual; but as a general rule, a corporation is not responsible for the unauthorized or unlawful acts of its officers, although done under color of their office. It has been held that cities are responsible to the same extent and in the same manner as natural persons, for injuries occasioned by the negligence or unskilfulness of their agents in the construction of works for their benefit; and where a city córporation is bound to keep the streets and sewers of the city in proper repair, it is liable to damages if any person is injured by its neglect to have such repairs made. Still, the question in this case is not whether the city in its corporate capacity is liable for an act done under its express authority, or for its own omission of a duty that is direct and absolute, and due from it as a corporation, such as the repairing of its streets, sewers, &c., but whether, although there is no provision in its charter subjecting it to liability for the acts of a mob, it is rendered liable therefor, by the failure of its officers to suppress it:' 13 B. Monroe 559. 'The officers of the city are *quasi* civil officers of the government, although appointed by the corporation. They are personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible. The corporation appoints them to office, but does not in that act sanction their official delinquencies or render itself liable for their official misconduct:' Id. So in White *v.* City Council of Charleston, 2 Hill, S. C. 572, it was held that the city corporation was not liable for the misfeasance of the intendant in unnecessarily blowing up the plaintiff's house to prevent the spread of a conflagration, although the intendant was expressly authorized by a city ordinance to pull

25 P. F. Smith—23

[Elliott *v.* City of Philadelphia.]

down and blow up buildings for that purpose where it might be judged to be necessary, and the ordinance gave the officer the right to judge whether the necessity existed. Fowle *v.* Common Council of Alexandria, 3 Pet. 398, was an action on the case against the city corporation for negligence in not taking security from a licensed auctioneer, as they were required by statute and ordinance to do, by means of which the plaintiff was injured. But it was held that the action would not lie, and Marshall, C. J., observed : ' That money corporations, or those carrying on business for themselves, are liable for torts, is well settled, but that a legislative corporation established as a part of the government of the country, is liable for losses sustained by a nonfeasance, by an omission of the corporate body to observe a law of its own, in which no penalty is provided, is a principle for which we can find no precedent, and we are not prepared to make one in this case.' ' As a general rule,' says Shaw, C. J., Thayer *v.* City of Boston, 19 Pick. 516, ' the corporation is not responsible for the unauthorized or unlawful acts of its officers, though done *colore officii*. It must further appear, that they were expressly authorized to do the acts by the city government, or that they were done bonâ fide in pursuance of a general authority to act for the city on the subject to which they relate.' Now, although police officers may have a general authority from the city to preserve order, to prevent breaches of the peace, and to make arrests for breaches of the peace occurring in their presence, yet it can hardly be pretended that such a general authority to make arrests, carries with it an authority from the city to do whatever the police officer may think proper to do in his discretion in making such arrests. If the city were to authorize a trespass, the city would be responsible for it. But where the city only authorizes a lawful act to be done in a lawful manner, it would seem to be very unreasonable to hold it responsible for the acts of its officers entirely outside of the authority which it has given them. The maxim *respondeat superior* has no just application in such a state of affairs. There is a feature in the case as presented by the pleadings, which might perhaps properly enter as an element into the decision, but which has not been argued by counsel. The first two counts disclose the fact that the plaintiff's loss occurred as a consequence of his own unlawful act, and it is a rule of law, that a party cannot be heard to allege his own unlawful act, and if such an act be one of a series of facts necessary to support the plaintiff's claim, then that claim must fail. The party who seeks redress in a court of justice must come with clean hands ; an action which requires for its support the aid of an illegal act cannot be maintained : Gregg *v.* Wyman, 4 Cush. 322 ; Robeson *v.* French, 12 Met. 24 ; Duffy *v.* Gorman, 10 Cush. 45 ; De Wirtz *v.* Hendricks, 9 Moore 586 : and the principle has been

[Elliott v. City of Philadelphia.]

applied to a claim for damages for an act remotely connected with the wrongful conduct of the plaintiff: Hunt v. Bell, 7 Moore 212.

" We are of opinion that the plaintiff's declaration sets forth no cause of action against the city. Therefore, judgment for the defendants on the demurrer."

The plaintiff removed the record to the Supreme Court and assigned for error, entering judgment for the defendant.

*S. W. Pettit*, for plaintiff in error.—If the driver is in no fault, the officers are voluntary bailees; if he is in fault, they are involuntary bailees: in either case they are liable for negligence: 2 Parsons on Contracts 96; Story on Bailments, § 44 *a*; 33, 33 *a*; Smith v. The Railroad, 7 Foster 86; Tudor v. Lewis, 3 Metc. (Ky.) 378; Hartlieb v. McLain, 8 Wright 510. The duty to keep safely was not impaired by the fact that the horse was taken whilst the owner was breaking an ordinance: Burke v. Trevit, 1 Mason 96. A master is liable for the mistakes of his servant in the exercise of a discretion: Seymour v. Greenwood, 7 Hurlst. & N. 356; Meyer v. 2d Av. R. R., 8 Bosw. 305; Croft v. Alison, 4 B. & Ald. 590; Penna. R.R. v. Vandiver, 6 Wright 365.

Where a power is conferred upon a city, the exercise of which is discretionary, there is no liability for non-performance or partial performance, but merely for neglect in the act of exercising the power: Weightman v. Washington, 1 Bl. (U. S.) 50; Adsit v. Brady, 4 Hill 630; Shepherd v. Lincoln, 17 Wend. 250; Jones v. New Haven, 34 Conn. 1; Robertson v. Chamberlain, 34 N. Y. 389; Mersey Docks v. Gibbs, Law Rep. 1 H. L. 93; Ward v. Lee, 7 Ell. & B. 426; Coe v. Wise, Law Rep. 1 Q. B. 711; Ruck v. Williams, 3 Hurlst. & N. 308; Hickok v. Plattsburg, 16 N. Y. 161; Conrad v. Ithaca, 16 N. Y. 158; Darlington v. The Mayor, 31 Id. 164; Erie City v. Schwingle, 10 Harris 384; Pittsburg v. Grier, 10 Id. 54 (64).

*C. H. Gross* (with whom were *T. J. Barger* and *C. H. T. Collis*, City Solicitor), for defendant in error.—The legislature makes the city the agent of the state so far as the legislation in regard to the police is concerned, and the principal not being liable for the negligent conduct of the police, the agent should not be: Fox v. The Northern Liberties, 3 W. & S. 103; Buttrick v. Lowell, 1 Allen 172; White v. Charleston, 2 Hill (S. C.) 571; Prather v. Lexington, 13 Ben. Monroe (Kentucky) 559; Martin v. The Mayor, 1 Hill 545; Levy v. New York, 1 Sandf. 465; Commissioners v. Duckett, 20 Md. 468; Lane v. Cotton, Lord Raymond 646; Schroyer v. Lynch, 8 Watts 453.

The opinion of the court was delivered, March 9th 1874, by

AGNEW, C. J.—The opinion by Judge Thayer is such an ample discussion of the question in this case that it is unnecessary to do

[Elliott *v.* City of Philadelphia.]

more than affirm the judgment upon it.   The case is distinguishable entirely from that of The City *v.* Gilmartin, 21 P. F. Smith 140.   It was decided upon the ground of agency, and it was therein expressly said : " Thus a mere statement of the facts discloses the relation of principal and agent in reference to the city waterworks, and not that of ordinary corporation officers performing merely municipal functions."   This is plainly the distinction between the two cases, the police officers in the present case, having acted merely in their official character when arresting the plaintiff for a breach of peace.   In The United States *v.* Hart, 1 Peters' C. C. R. 390, Judge Washington held, that driving a mail stage at a furious rate through the streets of Philadelphia, was a breach of the peace, and that, notwithstanding the Act of Congress against stopping the mails, a constable was authorized at common law, without a warrant, to prevent the peace from being broken, by arresting the driver.

Judgment affirmed.