## Stouffer, Appellant, *v.* Morrison.

Argued April 22, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Irwin Albert,* with him *Robert M. Frey,* and *Marian Schwalm Furman,* for appellant.

*George F. Douglas, Jr.,* with him *Faller and Douglas,* for appellee.

OPINION BY MR. JUSTICE BOK, June 30, 1960:

The plaintiff has sued three policemen and the Borough of Shippensburg, Cumberland County, for an alleged personal assault upon him by the officers. The borough filed preliminary objections in the nature of a demurrer, averring immunity from liability. The preliminary objection was sustained and the plaintiff has appealed.

In *Boorse v. Springfield Township,* 377 Pa. 109 (1954), 103 A. 2d 708, Mr. Chief Justice STERN said: "Plaintiff's case cannot surmount the barrier of the rule establishing the immunity of municipalities from liability for torts committed by their employes in the course of performance of a governmental function unless a right of recovery is expressly granted by statute."

The court below, by President Judge SHUGHART, filed the following opinion, lacking only its introductory paragraph, and we approve:

"It is well settled in this Commonwealth that generally a municipality is not liable for a trespass committed by one of its policemen. In Boorse v. Springfield Twp., 377 Pa. 109, two police officers discovered a valuable racing mare with one leg wedged in a culvert at the edge of a public highway. Without notifying the owner or giving him a chance to extricate the

mare the officers destroyed the animal. In sustaining the preliminary objection of the township to the plaintiff's complaint, Chief Justice STERN said at page 110:

" 'More than a century ago it was held in Fox v. The Northern Liberties, 3 W. & S. 103, that the defendant in that case, an incorporated district, was not liable for a trespass committed by its Superintendent of Police, who was alleged to have illegally seized a horse under a false pretense that its owner was violating the ordinance of the district. The court said (p. 106) : ". . . nor is it conceivable how any blame can be fastened upon a municipal corporation, because its officer, who is appointed or elected for the purpose of causing to be observed and carried into effect the ordinances duly passed by the corporation for its police, either mistakenly or wilfully, under colour of his office, commits a trespass; for in such case, it cannot be said, that the officer acts under any authority given to him, either directly or indirectly by the corporation; but must be regarded as having done the trespass of his own will, and he alone must be looked to for compensation, by the party injured."

" 'In Elliott v. The City of Philadelphia, 75 Pa. 347, which also happened to involve the seizure of a horse by the police, the same principle of immunity of the municipality was applied. There a carriage was being driven on a street of the city faster than was permitted by an ordinance; a policeman took the driver and the horse into custody and then negligently allowed the carriage to be broken and the horse to escape, run away and be killed. Citing the Fox case as authority, the court sustained a demurrer to the plaintiff's declaration and gave judgment for the defendant.'

"This same doctrine has been followed in a multitude of other cases, a list of which is set forth at page 111 of the opinion in the Boorse case, supra.

"Counsel for the plaintiff contends that the above rule is not applicable in the instant case because he alleges in his complaint that the borough was aware of the fact that these three police officers 'at various times in the recent past . . . were guilty of similar unprovoked and unjustifiable assault and battery upon (other) persons . . .' nonetheless did not dismiss the officers 'but instead ratified and/or adopted the acts of such members of its police force.'

"We need not concern ourselves with a consideration of those cases where municipal corporations have been held liable in tort for the negligent acts of their servants committed in the course of proprietary functions of the municipality. The activity in which the officers here were engaged was clearly a governmental function.

"The basic principle underlying the rule of municipality immunity from liability for the tortious acts of its police officers is that such officers, performing in a governmental capacity, are not the agents or servants of the municipality but of the state itself.

" 'The theory is that the municipal corporation has a dual function, one exercised as a mere agent of the state in the process of government, the other private in its nature in that it is exercised for the particular benefit of the corporation and its inhabitants as distinguished from those things in which the whole state has an interest. If acting in its governmental capacity, the municipality is not liable in tort for either a nonfeasance or a misfeasance, because in so acting it is but the agent of the state and is so far a part of the state that it partakes of the sovereignty of the state in respect to immunity from suit. Concisely stated: The state is sovereign, the sovereign cannot be sued without its consent, the municipality is a mere agent of the state; q.e.d., the municipality cannot be sued

unless the state shows its consent by legislation. . . . Another complication lies in the fact that the municipality being a legal entity can act only through its servants. In any case, then, in order for such corporation to be liable, the familiar doctrine of respondeat superior must be applied. But, say the cases, if the municipality is in the exercise of its public function the real superior is the state and not the municipality, and, for the reasons stated, there is no liability.' 120 A.L.R., 1376. This theory has been enunciated in numerous cases: Doty v. Village of Port Jervis, 52 N. Y. Supp. 57, 58; Buttrick v. City of Lowell, 1 Allen, 172; see annotation in 12 L. R. A. 537.

"It is plain that under the above theory the borough would not be liable because the officers are not the servants of the borough as alleged. The relationship necessary to make ratification operative is absent. Accordingly, it has been held that there could be no ratification of illegal acts of officers, such as to make the municipality liable. Calwell v. City of Boone, 2 N. W. (Iowa) 614; Peters v. City of Lindsborg, 20 Pac. (Kans.) 490.

"No cases in this Commonwealth have been cited and our own research has revealed none, but cases in other jurisdictions have consistently held that the municipality is not liable for the wilful violence or careless conduct of a public officer even where the violent temper or careless habits of the officer were or should have been known when he was appointed. 19 R. C. L. page 1108, Munic. Corp., Section 390.

"In Craig v. City of Charleston, 54 N.E. 184 (Ill.), the City was held not liable for an assault by a police officer even though it was alleged that the mayor who appointed him 'knew, or should have known, of his dangerous and vicious character.' In McIlhenney v. City of Wilmington, 37 S.E. (N. Car.) 187, it was

alleged that the assaulting policeman was frequently reprimanded by the mayor for his carelessness and incompetence, that the mayor and other city officials were frequently notified of his incompetency and that those who appointed him to the force were acquainted with his character. Nevertheless, a demurrer to the complaint, by the municipality, was sustained. The court said, at page 188: 'Police officers can in no sense be regarded as agents or servants of the city. Their duties are of a public nature, and their appointment is devolved on cities and towns by the legislature as a convenient mode of exercising the functions of government; but this does not render the city liable for their unlawful or negligent acts.' Other cases in which the municipality was held not liable even though there was an allegation that the municipality knew or should have known of the incompetency of the officer are: Rusher v. City of Dallas, 18 S.W. (Texas) 333; Doty v. Village of Port Jervis, 52 N. Y. Supp. 57; Lamont v. City of Waterville, 57 L. R. A. (N.S.) 1915 E., page 460 (Minn.); Wommack v. Lesh et al., 305 Pac. 2d (Kan.) 854 (1957).

"The allegation in the instant case upon which the plaintiff relies to enforce liability against the borough is that the borough was aware of alleged misconduct of the officers on prior occasions and impliedly ratified this misconduct by failing to dismiss the officers. The allegations in the present complaint, in substance, are the same as those in the cases cited above. We feel that the instant case is controlled by these decisions and the demurrer of the municipality must be sustained."

The judgment is affirmed.

------

CONCURRING OPINION BY MR. JUSTICE COHEN:

This case once again demonstrates the urgent need for legislative action. The attempt to determine wheth-

er liability exists when a state or municipal activity is conducted negligently by the test of whether it is a governmental or proprietary function has resulted in complete confusion. *Morris v. Mount Lebanon Township School District,* 393 Pa. 633, 144 A. 2d 737 (1958).

We have treated torts by public employees on an *ad hoc* basis. No course has been charted to guide the courts in determining when and to what extent liability should be imposed. Our prior decisions can neither be distinguished nor justified. This confusion can only be resolved by legislative enactment. We should honestly recognize that our conclusions are applicable only to the case now under consideration, and solely on that basis do I concur in the result.

Mr. Justice BENJAMIN R. JONES joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On February 14, 1959, three members of the police force of the Borough of Shippensburg assaulted, without provocation, the plaintiff James F. Stouffer, striking, punching and kicking him, throwing him to the ground and otherwise manhandling him. These same three policemen had beaten up other unoffending persons prior to the attack on Stouffer. The police authorities and borough officials were aware of the violent proclivities of these three officers, but did not dismiss them or do anything to correct their propensity for violence.

James Stouffer brought an action in trespass against the three men and the borough. The borough filed preliminary objections in the nature of a demurrer, which the court below sustained. The plaintiff appealed. This Court affirms the demurrer and accepts the opinion of the lower court as its own. I will, therefore, refer to that opinion as the Majority Opinion.

A reading of the Majority Opinion is its own best answer. It begins by citing *Boorse v. Springfield Twp.*, 377 Pa. 109, which encompasses the narrative of one of the most senseless and calloused acts that could be perpetrated by men supposedly representing the law. A valuable race horse by the name of All's Over had, while enjoying some unexpected but refreshing liberty, run into a culvert from which it could not extricate itself. Although imprisoned, the horse was not injured in any way. Two police officers came upon the unfortunate animal and, instead of trying to liberate it or even to notify its owner of what happened, they whipped out their revolvers and fired ten shots into the horse's head. For *All's Over* it was now indeed all over. His owner sued the two municipalities which had hired the police officers but this Court refused recovery, not because the policemen's actions could be justified but because, as it took pains to point out, more than a century ago "it was held in Fox v. The Northern Liberties, 3 W. & S. 103, that the defendant in that case, an unincorporated district, was not liable for a trespass committed by its Superintendent of Police, who was alleged to have illegally seized a horse under a false pretense that its owner was violating the ordinance of the district."

Thus, on the basis of a previous act of injustice by the government, this Court affirmed the injustice done the owner of All's Over. If an American visiting in Russia had seen two Communist policemen draw guns and needlessly slay a healthy horse, and then learned that the Russian government had refused compensation to the owner of the horse, the American would voice indignant astonishment over the manifestation of such unbridled tyranny. Why should a similar act in America be enveloped in impeccable legality?

In further attempted support of the lower Court's action in the case at bar, the Majority cites still another horse case. (*Elliott v. Phila.*, 75 Pa. 347). It tells us how in 1874 a policeman illegally seized a horse and so negligently handled it that it ran away and was killed. The owner sued for the value of the horse but the Court held that the municipality would not be liable for the negligence of its police officer. It based its decision on the precedent of what had been done in the *Fox* case where the superintendent had illegally seized the horse in that case under false pretense. If it was all right to commit a flagrant act of governmental abuse with the horse in the *Fox* case, it was equally all right to repeat the illegal performance in the *Elliott* case.

Thus, horse by horse, the fiction of governmental immunity for the tortious acts of its agents continues to raise its cacophonous clatter down the highway of law and justice.

Is it not about that time that these horse cases be retired to the Pasture of Innocuous Desuetude?

The principal theme of the Majority Opinion is that the plaintiff cannot recover because of the borough's governmental immunity from responsibility for the tortious acts of its agents. This theory is based on the supposition that since the king could do no wrong, our government, following in the wake of monarchial immunity, can also do no wrong.

On this mendacious doctrine rests the assumption that even a republican government may do no wrong and therefore may not be sued. But it is not true that government in America may not be sued. The government may be sued for breach of contract, for failure to properly maintain highways, for negligence in the manner of running its public parks, and for many other derelictions. Why may it not be sued for negligence

in hiring men obviously unsuited for police work or retaining them after it has been irrefutably established that they are a harm rather than a protection to the public?

The law on the responsibility of municipalities for the torts of its agents is in a hopeless tangle of inconsistency, and the time has come for this court to bravely face the issue and declare that a municipal corporation, like any other corporation, is to be held liable for the misdeeds of its agents and employees. Some of the distinctions made in the reported cases as to liability and non-liability approach the preposterous. For instance, in *Honaman v. Philadelphia*, 322 Pa. 535, the plaintiff was hit by a baseball in Fairmount Park maintained by the City of Philadelphia. He sued and recovered from the City of Philadelphia. But in *Scibilia v. Philadelphia*, 279 Pa. 549, the plaintiff, who was run over by a city truck hauling ashes to a refuse dump, was not allowed to recover because this Court said that the "gathering and disposal of refuse is primarily a health measure." But what of the health of Scibilia?

What is the theory which denies Scibilia recovery because he was run down by a garbage-carrying truck and allows recovery to Hill in the case of *Hill v. Allentown Housing Authority*, 373 Pa. 92, where the plaintiff was injured by falling into the ashes of an incinerator plant which was burning the same kind of refuse being carried in the Scibilia case? Why is it that one hit by a baseball may recover from the City and one hit by a truck may not?

The Majority holds in the case at bar that the municipality of Shippensburg is not responsible for the actions of its police officers in striking the plaintiff with their fists, feet and maces, because they were supposedly performing a governmental function, but if

they had committed a similar assault while they were in an automobile the municipality would have been liable. Does the difference in liability therefore depend on whether the policeman is on foot or ahorse? Is an automobile-riding policeman a lesser governmental agent than one on foot? We, of course, know that The Vehicle Code provides for municipal responsibility in automobile cases, but the principle involved is still the same.*

A dissent on the subject of governmental immunity in tort cases lends itself to extended treatment. I will forego launching into that extended treatment, but I wish to record that it is my belief, founded on appreciation of law, that the government, which should be the first to acknowledge error and make restitution for harm done its citizens, should not be exempt from rules which apply to everybody else, only because of fine-spun theorizing, academic argumentation and sophistic dialectics which have no place in the determination of what is fundamentally right and what is flagrantly wrong.

---

* *Roadman v. Bellone*, 379 Pa. 483.