## Graysneck, Appellant, *v.* Heard.

Argued March 16, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas A. Lazaroff* and *Franklyn E. Conflenti,* with them *Cauley, Birsic & Clarke,* for appellant.

*Robert Engel,* Assistant City Solicitor, with him *David Stahl,* City Solicitor, for City of Pittsburgh, appellee.

OPINION BY MR. JUSTICE JONES, June 24, 1966:

In the early morning of April 12, 1964, Charles F. Mushinsky was shot as he was leaving the Blue Belle Coffee Shop in Pittsburgh by one Robert Heard, a police officer for the City of Pittsburgh. Mushinsky died within an hour. Complaint in trespass was brought by Raymond Graysneck, administrator of decedent's estate, under the Pennsylvania wrongful death[1] and survival acts[2] against Robert Heard, the City of Pittsburgh and the owners of the Blue Belle Coffee Shop— Gregory Pappas, Steve Kavalis, Chris Pappas, and Andy Pappas.

The City of Pittsburgh [City] filed preliminary objections in the nature of a demurrer to the complaint based mainly on its assertion of immunity from liability for a tort committed by its police officer acting within the scope of his governmental authority. By an order filed on August 17, 1965, the Court of Common Pleas of Allegheny County sustained the City's position and dismissed the complaint as to the City of Pittsburgh. Plaintiff then appealed to this Court.

Since the court below sustained appellee's preliminary objections in the nature of a demurrer, we must accept for purposes of this appeal the truth of all well-

---

[1] Under the wrongful death statute, Act of April 15, 1851 P. L. 669, §19, 12 P.S. §1601; Act of April 26, 1855 P. L. 309, §1, as amended, 12 P.S. §1602, Raymond Graysneck brought the action on behalf of decedent's heirs and next of kin who were decedent's wife, Elizabeth C. Mushinsky, and decedent's three minor children, Charles E. Mushinksy, Mark A. Mushinsky and Richard R. Mushinsky.

[2] Fiduciaries Act of April 18, 1949, P. L. 512, §§601 and 603, 20 P.S. §§320.601 and 320.603.

pleaded facts but not conclusions of law in appellant's complaint: *Eden Roc Country Club v. Mullhauser*, 416 Pa. 61, 204 A. 2d 465 (1964). These relevant facts are that at approximately 5:00 a.m., April 12, 1964, the deceased, Charles F. Mushinsky was sitting in the rear of the Blue Belle Coffee Shop when a series of fights broke out among the patrons. Mushinsky decided to leave the premises to escape the fracas. As Mushinksy was exiting, Robert Heard, an off-duty City of Pittsburgh police officer who was nevertheless participating in the fights, attempted to quell the disturbances by drawing a revolver which discharged, striking accidentally Mushinsky fatally in the chest.

We held in 1960 that a municipality is immune from liability with respect to torts committed by its police officers in the course of the performance of a governmental function unless a right of recovery is expressly granted by statute.[3] *Stouffer v. Morrison*, 400 Pa. 497, 162 A. 2d 378 (1960). The *Stouffer* decision disposes of this appeal because Heard was acting within the scope of a governmental function as a policeman when he produced his revolver in order to restore order.

Appellant now asks this Court to overrule the *Stouffer* decision thereby subjecting the City to the possibility of liability in this case.

We are unwilling so to do. Cf. *Dillon v. York City School District*, 422 Pa. 103, 220 A. 2d 896 (1966).

The lower court's order is affirmed.

---

[3] In the *Stouffer* case, I joined in Mr. Justice COHEN's concurring opinion which invited the legislature "to guide the courts in determining when and to what extent liability should be imposed" (400 Pa. at 503) on a municipality when one of its activities has been negligently performed. However, the legislature has not responded to this invitation. Their last pronouncement in this area was the Act of April 29, 1959, P. L. 58, §623, 75 P.S. §623, which provides for the joint liability of the municipality with its negligent employee in the use of police vehicles and fire engines.

Mr. Justice ROBERTS dissents for the reasons stated in his dissenting opinion in *Dillon v. York City School District*, 422 Pa. 103, 109, 220 A. 2d 896, 899 (1966).

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Justice JONES has written, from his point of view, a very able and persuasive opinion, and I respect it. I wonder, however, why he says that if the municipality immunity from tort is to be abolished, this case "would not be the appropriate vehicle." I would not wait for the perfect case to overrule an imperfect rule. Governmental immunity is so wrong in principle, so contrary to the most elementary rules of justice, and so opposed to the modern and healthy doctrine that government should not enjoy any privilege denied to the people who constitute it, that this Court should welcome the opportunity—any opportunity—to eradicate, abolish and forever wipe out the fallacious, unjust, cruel proposition that the government, like the king, can do no wrong. Our very nation is founded on the proposition that a king can be wrong, very wrong. Thomas Jefferson wrote a strong indictment against King George III, it will be recalled.

Justice JONES says that he joined in Justice COHEN's concurring opinion in the case of *Stouffer v. Morrison*, 400 Pa. 497, "which invited the legislature 'to guide the courts in determining when and to what extent liability should be imposed' on a municipality when one of its activities has been negligently performed."

Justice JONES then says that the Legislature has not responded to this invitation. This is a modest understatement.

The Legislature has ignored, and will probably continue to ignore, these plaintive entreaties of this Court that it legislate in a field where the rule to be changed originated with the courts. This happened in connec-

tion with the overruling of the charitable immunity doctrine. Over and over this Court had said that the Legislature should determine whether that doctrine should be abolished. The Legislature had other things to do. And so we finally did what we should have done in the first place. We ourselves abolished our own bad doctrine. We should do the same with governmental immunity.

In the *Stouffer* case cited by Justice JONES here, the Majority Opinion recited the whole sorry history of governmental immunity which, strangely enough, is written with horses' hooves in the legalistic annals of the Commonwealth. The first case in Pennsylvania which proclaimed governmental immunity from liability for the torts of its agents was *Fox v. Northern Liberties*, 3 W. & S. 103, decided in December, 1841. In that case, a superintendent of police seized a horse allegedly under false pretense that the owner was violating the ordinance of the district. The Court held that the law compelled the presumption that the horse seizer was acting of his own will, and not for the municipal corporation which employed him. Then came the case of *Elliott v. The City of Philadelphia*, 75 Pa. 347, decided in 1874, where a policeman seized another horse, charging the owner with driving it faster than was permitted by ordinance. He so negligently maintained the horse that it ran away and met an untimely end. The owner of the horse sued the municipality for the negligence of its agent and this Court held the municipality was not liable, citing for its authority the previous horse case of *Fox v. Northern Liberties*. And then, in 1954, appeared the *Boorse v. Springfield Township* case, 377 Pa. 109, where three governmental agents shot a race horse in a display of stupidity and brutality rarely surpassed in the annals of jurisprudence. The owner of the horse sued the municipality involved and for his pains he was greeted with equine

laughter because the Court trotted out the two previous horse cases.

In my Dissenting Opinion in the *Stouffer* case, I said: "Thus, horse by horse, the fiction of governmental immunity for the tortious acts of its agents continues to raise its cacophonous clatter down the highway of law and justice. Is it not about time that these horse cases be retired to the Pasture of Innocuous Desuetude?"

And I would say today, as we consider once again the subject of governmental tort immunity, is it not about time to discard horse sense and apply the common sense of a democratic people? What is government but the people and, since people may be sued in their individual capacities for their civil wrongs, is there any reason why they may not be sued in their collective grouping? I am confident that if a Gallup Poll were taken among the citizenry of Pennsylvania on this subject, the results would show that the people overwhelmingly condemn the outmoded, outdated, unjust, inhumane, decadent rule known as governmental immunity.

The Gallup pollsters, without even interviewing me, have my consent to record me as voting for repudiation, until such time as this Court does what it did in the *Flagiello* case, abolish what does not represent justice, fair dealing, or even fair play, the very synonym of the American spirit.