Dillon, Appellant, *v.* York City School District.

Argued May 25, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John R. Gailey, Jr.,* with him *Dell'Alba, Gailey & Gilbert,* for appellants.

*Leo E. Gribbin, Jr.,* with him *Stuart M. Neely,* and *Stetler & Gribbin,* for appellee.

OPINION BY MR. JUSTICE JONES, June 24, 1966:

On February 27, 1962, while crossing over from one building of the William Penn Senior High School [1] to another in order to attend her next class, Donna L. Dillon, the minor plaintiff, slipped and fell while descending a flight of eight concrete steps.[2] Suit was brought against the York City School District [School District] and four of its employees for damages arising from minor plaintiff's resulting injuries which were allegedly due to the accumulation of ice that had become glazed and ridged on the steps. The complaint charged that the School District knew or should have known of this dangerous condition before minor plaintiff fell and therefore was liable, under the doctrine of respondeat superior, for failing to maintain the steps in a safe condition and failing to warn the minor plaintiff of the hazardous condition then existing.

The School District filed preliminary objections in the nature of a demurrer to the complaint based on its assertion of immunity from liability for torts committed by its employees *acting* within the scope of its legitimate governmental functions.[3] On November 15, 1965, the Court of Common Pleas of York County sustained the School District's preliminary objections and entered judgment in favor of the School District and against the plaintiffs. From that judgment, plaintiffs have appealed to this Court.

In *Shields v. Pittsburgh School District,* 408 Pa. 388, 184 A. 2d 240 (1962), and *Supler v. North Franklin Township School District,* 407 Pa. 657, 182 A. 2d

[1] William Penn Senior High School is operated by the York City School District.

[2] The eight concrete steps which were a total of six feet high were completely exposed to the elements.

[3] Plaintiffs concede that the injury arises from the alleged failure of the School District to perform properly its governmental function.

535 (1962), we recently re-affirmed the doctrine of a school district's immunity from suit for the negligence of its officers and employees while engaged in governmental functions. See also cases cited in *Supler* at 658. Thus, *Shields* and *Supler* would control this appeal unless we accept plaintiffs' plea to overrule the line of cases which *Shields* and *Supler* represent.

Plaintiffs have presented recent decisions in other jurisdictions where courts have abolished municipal corporations' and school districts' immunity from tort liability. See e.g., *Hargrove v. Town of Cocoa Beach,* 96 So. 2d 130 (Fla. 1957); *Molitor v. Kaneland Community Unit District,* 18 Ill. 2d 11, 163 N.E. 2d 89 (1959), cert. den. 362 U.S. 968, 80 S. Ct. 955; *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W. 2d 795 (1962); *Haney v. City of Lexington,* 386 S.W. 2d 738 (Ky. 1964). We are now asked to follow these decisions.

Even though the doctrine of municipal immunity from tort liability was initially imposed by judicial decision, *Russell v. Men of Devon,* 2 T.R. 667, 100 Eng. Rep. 359 (1788),[4] we are reluctant to abolish this doctrine by judicial fiat. In *Morris v. Mt. Lebanon Township School District,* 393 Pa. 633, 144 A. 2d 737 (1958), Mr. Justice COHEN stated: ". . . the solution of the problem of government responsibility in tort is too complex an undertaking to permit the partial and piecemeal judicial reform which the plaintiff seeks. Establishment of a comprehensive program by legislation applicable to the Commonwealth and to all of its sub-divisions is sorely needed to deal effectively with tort claims arising out of the conduct of governmental activities." (393 Pa. at 635, 636). Four years later,

---

[4] The rule of *Men of Devon* was first brought into this country by the case of *Mower v. Inhabitants of Leicester,* 9 Mass. 247 (1812).

Mr. Chief Justice BELL reiterated these thoughts in *Supler v. North Franklin Township School District,* 407 Pa. 657, 660, 182 A. 2d 535, 537: "If it is to be the policy of the law that the Commonwealth or any of its instrumentalities or any political subdivisions are to be subject to liability for the torts committed by their officers or employees while engaged in governmental functions, the change should be made by the Legislature and not by the Courts." See also Mr. Justice COHEN'S concurring opinion requesting the legislature to undertake a full scale review of governmental immunity in Pennsylvania, in *Stouffer v. Morrison,* 400 Pa. 497, 502, 503, 162 A. 2d 378, 381 (1960).

Even though the reasons for originating governmental immunity are now anachronistic, the Commonwealth may wish to sustain the rule for other, more modern, reasons. Only the legislature can deal with the field of immunity in all of its state, municipal corporations and school district aspects by enacting a comprehensive bill based on extensive hearings and investigation. On the other hand, we continue to be confronted with the problem on the most fragmented basis. Cf. the case at bar (school district) with *Graysneck v. Heard,* 422 Pa. 111, 220 A. 2d 893 (1966) (municipal corporations).

Recently, the Supreme Court of Iowa was faced with the same problem in *Boyer v. Iowa High School Athletic Association,* 127 N.W. 2d 606 (1964) that confronts this Court today. After extensively reviewing the case law which has judicially overthrown the doctrine of governmental immunity, especially *Molitor v. Kaneland Community Unit District,* 18 Ill. 2d 11, 163 N.E. 2d 89 (1959) and *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W. 2d 795 (1962), the *Boyer* court decided that legislative action was still the more satisfactory solution: "As above indicated, whether or not the state or any of its political sub-

divisions or governmental agencies are to be immune from liability for torts is largely a matter of public policy. The legislature, not the courts, ordinarily determines the public policy of the state. . . . *We are fully aware of the trend away from governmental immunity.* . . . Consideration of the problems of legislative vs. judicial abrogation of the rule, including the precedents plaintiff cites to us, leaves us satisfied the policy we have announced is the preferred one. . . . *The conclusion reached from such re-examination is, as stated, that abrogation of the doctrine should come from the legislative, not judicial, action.*" (127 N.W. 2d at 612, 613). (Emphasis added). See also: *Weisner v. Board of Education of Montgomery County,* 237 Md. 391, 206 A. 2d 560 (1965).

Finally, plaintiffs argue that the School District waived its immunity to tort liability by the purchase of liability insurance protecting itself and not its employees.[5] We rejected this contention in *Supler v. North Franklin Township School District,* 407 Pa. 657, 659, 660, 182 A. 2d 535, 537 (1962). The insurance policy protects the School District for possible liability incurred while engaging in proprietary functions.

Judgment affirmed.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I join in the excellent opinion of Brother JONES, but am constrained to add the following comment due to the factual situation this case presents.

---

[5] It follows from *Supler* that the averment of liability insurance coverage in the complaint is not irrelevant and prejudicial as the School District has argued. Insurance coverage is material here only because it bears on the possibility of waiver of immunity. This in no way violates the general rule that the averment of defendant's insurance coverage is immaterial and prejudicial in an action for personal injuries. *Trimble v. Merloe,* 413 Pa. 408, 410, 411, 197 A. 2d 457 (1964).

A school district is both constitutionally and legislatively an arm of the Commonwealth itself. See, Pennsylvania Constitution of 1873, Art. X, §1, and the Act of March 10, 1949, P. L. 30, §1 et seq., as amended, 24 P.S. §1-101 et seq. (Supp. 1965). As such, the defendant school district is shielded by the sovereign immunity of the Commonwealth, as well as the doctrine of governmental immunity. For this Court to decree that the Commonwealth itself is no longer immune from tort liability might well constitute an encroachment upon the prerogatives of the General Assembly, and as such be violative of the Separation of Powers Doctrine inherent in our form of government. See, *Wilson v. Phila. School Dist.*, 328 Pa. 225, 195 A. 90 (1937), and *Bailey v. Waters*, 308 Pa. 309, 162 A. 819 (1932).

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I believe that the Majority Opinion magnifies and makes unnecessarily complex the issue in this case. It is simply a trespass action, of which there are myriads. I believe we should decide whether the defendants are liable as a matter of law and justice, just as, in the *Flagiello* case, we decided whether a charitable institution is liable for the torts of its agents.

The day will come when this Court can no longer escape answering the question as to whether school districts are liable in tort under circumstances such as those announced in this litigation. It is a vain hope that some other branch of the government will accept the task which is strictly that of the judiciary. Indeed, I would say it is an improper hope to indulge in, that the Legislature will take over a responsibility which resides in the courts.

There is adequate law on the books to guide us in rendering a decision founded on the natural and eternal

principles of justice. I see no reason for postponing the inevitable.

I would decide this case today by reversing the lower court's dismissal of the complaint.

————

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

As the majority opinion makes clear, the issue which the Court is today deciding is not the merits of the doctrine of governmental immunity. That doctrine has been thoroughly discredited and is no longer able to claim the allegiance of those who have given serious consideration to the problem. See, e.g., Borchard, Government Liability in Tort, 34 Yale L.J. 1 (1924); 36 Yale L.J. 1 (1926); Casner and Fuller, Municipal Tort Liability in Operation, 54 Harv. L. Rev. 437 (1941); Leflar and Kantrowitz, Tort Liability of the States, 29 N.Y.U. L. Rev. 1363 (1954); Smith, Municipal Tort Liability, 48 Mich. L. Rev. 41 (1949); Repko, American Legal Commentary on the Doctrine of Municipal Tort Liability, 9 Law & Contemp. Prob. 214 (1942); *Muskopf v. Corning Hosp. Dist.,* 55 Cal. 2d 211, 359 P. 2d 457 (1961); *Hargrove v. Town of Cocoa Beach,* 96 So. 2d 130 (Fla. 1957); *Molitor v. Kaneland Community Unit Dist.,* 18 Ill. 2d 11, 163 N.E. 2d 89, cert. denied, 362 U.S. 968, 80 S. Ct. 955 (1959); *Haney v. Lexington,* 386 S.W. 2d 738 (Ky. 1964); *Williams v. Detroit,* 364 Mich. 231, 111 N.W. 2d 1 (1961); *Spanel v. Mounds View School District,* 264 Minn. 279, 118 N.W. 2d 795 (1962).

The issue for decision, therefore, is whether the doctrine of governmental immunity, imposed [1] and continued [2] by court decision but now felt to be unresponsive to modern conditions, should be abrogated by judi-

————

[1] *Fox v. Northern Liberties,* 3 W. & S. 103 (1841).

[2] *Stouffer v. Morrison,* 400 Pa. 497, 162 A. 2d 378 (1960), and cases cited therein.

cial action or retained as a matter more properly to be dealt with by the Legislature.

I am aware of the considerations against court action in this area, and I do not find them to be without merit. However, in my view, this Court should no longer avoid responsibility for its past decisions by directing those injured as the result of the negligence of a school district or a municipality, see *Graysneck v. Heard*, 422 Pa. 111, 220 A. 2d 893 (1966), to the Legislature.

There exists in this Commonwealth a situation which is unconducive to legislative review of the doctrine, since those interests which enjoy the protection of governmental immunity from liability quite naturally oppose legislative consideration of the area. It is the decisions of this Court which have brought about this situation, and it should be by decision of this Court that the situation is corrected. Once we withdraw from the area, the Legislature will have ample opportunity to devote to the problem the study which it well deserves. This, in fact, has been the experience of other jurisdictions whose courts have faced up to the task of disavowing a rule which they no longer, in good conscience, could justify on its merits.[3]

This Court recently was confronted with an analogous situation concerning the liability in tort of charitable organizations. *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193 (1965). I believe that the issue was properly resolved in that case, and I continue to adhere to the view which I there expressed: "Unwise rules need not be perpetuate forever. Mr. Justice BRANDEIS was fond of saying that no case was ever settled until it was settled correctly. There is no more arrogance involved in rectifying a

---

[3] See, e.g., Cal. Civ. Code §22.3; Ill. Ann. Stat. ch. 34, §301.1; ch. 57 1/2, §3(a); ch. 105, §12.1-1; ch. 122, §§825, 829.

mistake than in making it in the original instance. I cannot believe that the common law tradition, which has served us so well because of its illuminating ability to adapt and re-examine itself, demands a policy of unyielding adherence to a thoroughly discredited principle." *Flagiello v. Pennsylvania Hospital,* supra, at 518, 208 A. 2d at 209.

Accordingly, I dissent.