Husser, Appellant, *v.* Pittsburgh School District.

250

Argued March 17, 1967.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard Markovitz*, with him *George Shorall*, and *Royston, Robb, Leonard, Edgecombe, Miller & Shorall*, for appellants.

*Justin M. Johnson*, Assistant Solicitor, with him *Niles Anderson*, Solicitor, for school district, appellee.

OPINION PER CURIAM, May 2, 1967:

The minor plaintiff attended a public high school in the city of Pittsburgh.   While leaving the school through the boys' exit at the end of the day's classes on February 11, 1965, he was accosted, assaulted and seriously beaten by a group of rowdy youths when he refused their demands for money.   This action for damages against the school district was later institut-

ed. The lower court sustained preliminary objections to the complaint in the nature of a demurrer and dismissed the action. The plaintiffs appeal.

The complaint alleges that similar criminal acts occurred with great frequency in and about the same school during the months immediately prior to the attack involved; that the school district and its agents knew of the existence of these occurrences and the danger present to those attending the school; and neglected and refused to take any precautionary measures to protect the safety of the minor plaintiff or the other pupils attending the school.

Appellants' counsel earnestly argues that the Pennsylvania rule, which protects a school district while engaged in the exercise of its governmental functions from vicarious liability for the tortious infliction of injury by its agents and employees, should be abolished. The rule was recently reiterated in *Dillon v. York City School District*, 422 Pa. 103, 220 A. 2d 896 (1966). We again affirm our ruling in this respect.

Appellants also contend, that the conduct of the defendant was tantamount to the maintenance of a nuisance on the school property to which the immunity rule does not apply. The acts complained of may constitute negligence on the part of the school district, but do not constitute a nuisance in law. See, *Carlo v. Scranton School District*, 319 Pa. 417, 179 A. 561 (1935); *Anderson v. Philadelphia*, 380 Pa. 528, 112 A. 2d 92 (1955); and, *Moss v. School District of Norristown*, 250 F. Supp. 917 (E.D. Pa. 1966).

Judgment affirmed.

Mr. Justice JONES concurs in the result.

———

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result because in my view the plaintiff has failed to allege a cause of action. However, I

adhere to the views expressed in my dissenting opinion in *Dillon v. York City School District* 422 Pa. 103, 109, 220 A. 2d 896, 899 (1966) and would overrule the doctrine of governmental immunity.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

If the defendant school district had permitted a Bengal tiger to roam the school yard of the Schenley High School, and the minor plaintiff, Louis Husser, Jr., had been mangled by that savage beast, I cannot believe that the Majority of this Court would say that the defendant would not be guilty of neglect in allowing such a peril to life and limb to exist. The responsibility of holding in leash a raging mob of juvenile delinquents intent on ruinous mischief cannot be less.

The school authorities knew of the criminal tidal wave which from time to time inundated the school property. The newspapers, as well as radio and television news programs, frequently referred to this disgraceful victimization of the small and the weak by the big and the brutal, but the authorities initiated no measures to offer protection to the school children. In consequence, Louis Husser suffered a broken jaw, facial paralysis, disfigurement and serious anatomical breakage.

He comes into court through his father and seeks redress, but this Court summarily disposes of the litigation by saying that never in the past did a school district have to respond in damages for injuries done to children, no matter how negligent the district might be. Not only that, the Majority says, why, just recently in the case of *Dillon v. York City School District*, 422 Pa. 103, we reiterated our rule that if a child breaks its leg or in any other way is injured because of the averred negligence of a school district, the courts will not listen to any such complaint. The Majority advances this self-stultifying proposition with

an aplomb that says in effect that the recency of an aggression justifies its continuing repetition.

The Majority advances no rationalization for denying the injured plaintiff in this case a forum. It merely says we never allowed a school child any right to sue a school district, and we do not propose to open the court doors now to such cases.

This injustice cannot endure forever. I am satisfied that the day will arrive, and it cannot be far off, when people will laugh at solemn decisions of the courts of law which declare that everybody is responsible for his civil wrongs at law,—everybody but the government. What is government, but an institution set up by the people to protect the people? To say that anyone injured by the government cannot sue the government is like saying that a ship built by certain individuals may transport anyone but the builders.

During the third year of my incumbency on this bench I wrote a dissenting opinion against governmental immunity, in which I discussed at length the unfairness, illogicality and unreasonableness of that proposition. In that case, *Boorse v. Springfield Twp.*, 377 Pa. 109, two policemen killed a valuable race horse called *All's Over*. They emptied their revolvers into his head, although the horse was in excellent health and was merely temporarily wedged in a culvert from which he could have been extricated easily. The owner of the valuable horse sued Springfield Township, employer of the police, but this Court held that the municipality was immune from liability since it enjoyed sovereign immunity. This Court, then as today, seemed to believe that it is enough to say "sovereign immunity" and all the processes of law and of man's brain will stop functioning as if in the terrified presence of a charging lion. Briefly, I said in the *Springfield Township* case: "The theory of governmental immunity for the tortious acts of governmental repre-

sentatives, employes and agents is founded upon the presumption that a sovereign power cannot be adjudged in error, and this idea in turn stems from the meretricious formula that a king can do no wrong . . . [D]espite the fact that America discarded kings nearly two centuries ago and that the English monarch is now but an innocuous geniality, the common law deriving from British sovereigns still proclaims that the sovereign power can do no wrong. The time has come to bury this legal charlatanry in the grave of its discredited monarchial grandsires."

Since I filed that dissenting opinion 13 years ago I have written a number of dissenting opinions against the archaic, unsportsmanlike, reason-defying, bizarre, self-stultifying, monumentally unjust, cruel, brutal, undemocratic piece of pedantical nonsense known as sovereign immunity. A governmental doctrine which compels corporations and natural persons to bind up the wounds of children struck down through the negligence of corporations and persons but which will itself forget the children languishing in the street where they have been felled by governmental irresponsibility is a doctrine that cannot much longer retain the respect of the legal profession, the legislative department of the state and the general public. Thus, I refuse to believe that this additional timber piled by this Court on the back of the patient, suffering camel of the public means that the battle for reason and justice in this field of the law is, like the life of the poor racehorse of Boorse Township, *all over*.