# Ayala et al., Appellants, *v.* Philadelphia Board of Public Education.

Argued September 12, 1972.   Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Stephen M. Feldman,* with him *Joseph G. Feldman,* and *Feldman & Feldman,* for appellants.

*Robert T. Lear,* for appellee.

OPINION PER CURIAM, November 28, 1972:
Order and judgment affirmed.

———

CONCURRING OPINION BY HOFFMAN, J.:

In this appeal, appellant presents a classic situation where the doctrine of governmental immunity has always been applied.   Appellant's sole argument is that this judicially-created immunity should be abolished.

In the court below, appellants brought an action in trespass to recover damages for personal injuries suffered by the fifteen-year-old minor plaintiff which resulted in amputation of the minor's arm.   The injury occurred while minor-plaintiff was operating a shredding machine in the upholstery class in the Carrol School in Philadelphia where he was a student.   De-

fendant's preliminary objections to appellants' complaint raising the defense of governmental immunity were granted, and judgment was entered for defendant. This appeal has followed.

Our Supreme Court has held that governmental entities are not liable in tort for injuries arising out of governmental rather than proprietary functions.[1] As the Court stated in *Morris v. Mt. Lebanon Township School District*, 393 Pa. 633, 638, 144 A. 2d 737 (1958), ". . . if a given activity is one which a local government unit is not statutorily required to perform, or if it may also be carried on by private enterprise, or if it is used as a means of raising revenue, the function is proprietary." In applying these standards, I must agree with the lower court and the majority of this Court that the Board of Education, by providing its city students with vocational education was acting in a governmental function, specifically authorized by the legislature. 24 P.S. §18-1841.

The question then becomes whether there exists any continued vitality in the doctrine of governmental immunity itself to sustain a bar to the instant case.

The doctrine of governmental immunity is constantly being rejected by other jurisdictions, and I believe it is long past the time for this jurisdiction to do likewise. Since 1958, our Supreme Court has recognized "the errors of history, logic and policy which were responsible for the development of this concept." *Morris v. Mt. Lebanon Township School District*, supra at 635. Nevertheless, the Court has refused to overturn immunity in this area, calling always on the legis-

---

[1] In *Dillon v. York City School District*, 422 Pa. 103, 220 A. 2d 896 (1966), and *Graysneck v. Heard*, 422 Pa. 111, 220 A. 2d 893 (1966), the Court declined to overrule the judicially-initiated governmental immunity doctrine, and rather deferred to the legislature for future action.

lature to act. While our Supreme Court has already abrogated charitable immunity and parental immunity, despite the argument that only the legislature could do so, it continues to shy away from acting on this equally-outrageous doctrine which denies a cause of action for injuries caused by the tortious acts of a governmental unit. I note with hearty approval the Dissenting Opinions of Justices ROBERTS and POMEROY, which have clearly and most convincingly attacked the doctrine. See, e.g., *Smeltz v. Harrisburg,* 440 Pa. 224, 269 A. 2d 466 (1970); *Flinchbaugh v. Cornwall-Lebanon Suburban Joint School Authority,* 438 Pa. 407, 264 A. 2d 708 (1970); *Laughner v. Allegheny County,* 436 Pa. 572, 261 A. 2d 607 (1970). In *Laughner,* Justice ROBERTS pointed out the absurdity of continuing the governmental immunity doctrine in light of recent actions of the Court in other areas: "There is no jurisprudential difference between abrogating charitable immunity and abrogating governmental immunity. With charitable immunity rejected, I can see no reason for the majority's refusal to likewise reject governmental immunity. . . . Surely this Court has permitted too many years to pass without correcting the injustices produced by its own doctrine." at 436 Pa. 576. In the same case, Justice POMEROY, tracing the traditional arguments for retaining the doctrine and painstakingly considering each contention, reasoned: "As governmental bodies become larger, as they multiply with the population, as more services are demanded of them and they become more pervasive, their insulation from liability becomes more significant and more serious. In my view, neither the early conceptualistic theories nor the more recently articulated policy arguments are adequate to justify retention of the immunity doctrine in its present broad scope." at 436 Pa. 579.

As an inferior court we are bound by the decisions of the Supreme Court, which are to be regarded as law and should be followed until they have been reversed or overruled. As we said in *Beckham v. Travelers Insurance Co.*, 206 Pa. Superior Ct. 488, 497, 214 A. 2d 299 (1965), "[w]ere this a case of first impression in Pennsylvania, we might be inclined to follow the apparent trend of the recent decisions in other jurisdictions but we are bound by the decisions of our Supreme Court. If there is to be any change in the policy of the Commonwealth on this subject, such change will have to come from the Supreme Court or from the legislature."

While I have often expressed my dissatisfaction with the concept of governmental immunity [see, e.g., my dissenting opinion in *Flisek v. Star Fireworks, Inc.*, 220 Pa. Superior Ct. 350, 286 A. 2d 673 (1971)], I believe it is for the highest court of the Commonwealth to act to abrogate the inequities of the doctrine of sovereign immunity.

For the above stated reasons, I concur in the result of the majority.

SPAULDING, J., joins in this concurring opinion.

---

CONCURRING OPINION BY PACKEL, J.:

I agree with the profound expression of the need for change that is stated so ably in the concurring opinion of Judge HOFFMAN. I differ with him only in that his opinion is a little too broad as to the necessity for this Court to follow decisions of our Supreme Court.[1] We need not follow blindly an old decision

---

[1] A statutory provision requiring the Superior Court to follow a decision of the Supreme Court as a binding authority, Act of June 24, 1895, P. L. 212, §10, 17 P.S. 197, was repealed by the Appellate Court Jurisdiction Act of 1970, July 31, 1970, No. 223, Article V, §509, as amended, 17 P.S. §211.509(a)(1).

which we are convinced the Supreme Court would not follow;[2] nor need we follow a decision of our Supreme Court which the Supreme Court of the United States has subsequently decided is violative of the federal constitution.[3] In the absence of some special factor, the orderly process of judicial administration calls for this Court to follow a binding precedent of the Supreme Court.

[2] *Manley v. Manley*, 193 Pa. Superior Ct. 252, 164 A. 2d 113 (1960).

[3] *Cf. Commonwealth v. Franklin*, 172 Pa. Superior Ct. 152, 194, 92 A. 2d 272, 293 (1952).