# THE COUNTY OF LEHIGH v. ANNIE M. HOFFORT.

ERROR TO THE COURT OF COMMON PLEAS OF LEHIGH COUNTY.

Argued February 16, 1887—Decided April 18, 1887.

1. A foot passenger passing upon a narrow foot-way, unprotected by guards, over a long and narrow county bridge in a large city was injured by a runaway team; *held*, that as such an occurrence could not have been reasonably foreseen by the authorities as the result of a failure to erect barriers, the county was not liable.

2. In the erection of a county bridge in a village, the county is not liable for the failure of its commissioners, in the exercise of a proper discretion, to anticipate the growth of the village into a city; or, in maintaining the bridge, for a like failure to determine the necessity for improvements, which may be supposed to be necessary to meet the demands of a greatly increased travel, or to anticipate that horses would become unmanageable on the wagon-way and that injuries might thereby be inflicted upon foot-passengers.

3. A statute enacted, "That the commissioners of Lehigh county are hereby authorized to erect foot sidewalks adjoining the stone bridge crossing the Jordan Creek, at the Hamilton street crossing in the city of Allentown, county of Lehigh, Pennsylvania, at the cost and expense of the county:" *held*, that the power given was discretionary only, imposing no legal duty, and that the county was not liable for injuries resulting from a failure to exercise the power.

Statement of Facts.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 148 January Term 1887, Sup. Ct.; court below No. 1 January T. 1884, C. P.

The suit below was in case for Negligence by Annie M. Hoffort against the county of Lehigh.

On the trial it was shown that in 1834 a county bridge was erected six hundred feet long across the Jordan Creek and Meadows at Allentown, Lehigh county. Allentown was then a village, all on the western side of Jordan Creek; now it is a city of about 25,000 inhabitants occupying both sides of said creek. The bridge was twenty-six feet in width, a passenger railway occupying eight feet on one side, a foot-walk of four feet in width being on the other side with curb-stones six inches high, and a road bed of fourteen feet in width with no barrier between it and the curb-stones of the foot-way. A branch of the Lehigh Valley Railroad runs beneath the bridge through one of its arches.

An act of Assembly was passed approved, February 18, 1870, P. L. 191, providing: "That the commissioners of Lehigh county are hereby authorized to erect foot sidewalks adjoining the stone bridge crossing the Jordan Creek at the Hamilton street crossing, in the city of Allentown, county of Lehigh, Pennsylvania, at the cost and expense of the county;" but the sidewalks thus authorized had not been erected by the county commissioners on October 5, 1883.

About noon on the date last mentioned, while the plaintiff, a young woman, was crossing the bridge referred to from west to east, carrying the dinner of a brother employed on the other side, a team of two horses and a wagon crossing the bridge in the same direction became unmanageable and, the driver losing control of them, ran upon the sidewalk. On account of the noise of steam escaping from an engine on the railroad beneath her, the plaintiff did not hear the team approaching until it was almost upon her, and then she leaned over the parapet of the bridge to escape, but was struck by the hubs of the wheels and severely injured.

The plaintiff produced on the trial testimony from some

witnesses that the bridge was dangerous for ordinary travel, from others that it was extremely dangerous in case of a runaway, and one witness testified that on a Saturday in December, 1881, a not unusually busy day, by actual count, not including the trips of street cars and omnibuses, 8141 persons and 875 conveyances (from one to six horse teams) had passed over the bridge from 5 o'clock A. M. to 10 o'clock P. M.

The plaintiff requested the court to charge, (1) that the act of Assembly before quoted, was mandatory upon the county commissioners, and a failure by the county to build a sidewalk or sidewalks along the bridge in question within a reasonable time after its passage was negligence; (2) that if the jury believed from the evidence that by the building of a sidewalk or sidewalks along and on the outside of the bridge with a proper guard wall or railing between the road-bed of the bridge and sidewalk, the injury to the plaintiff could have been avoided, the defendant was guilty of negligence and the plaintiff should recover; and (3), if the jury believed from the evidence that at the time of the injuries the bridge was in an improper, unsafe and dangerous condition and the defendant had knowledge thereof, the defendant was guilty of negligence and the plaintiff should recover. The defendant requested the court to charge that under all the evidence the verdict should be for the defendant.

The court, EDWIN ALBRIGHT, P. J., refused all these points and charged *inter alia* :—

. . . . . There is no allegation that the commissioners at the time this accident happened had not maintained the bridge as it had been there before, and as it had been ordained from the beginning; but the allegation of the plaintiff is, that the bridge was insufficient, and the complaint is that the bridge was insufficient because it was too narrow, and because there was not a sidewalk there of adequate width, and because there was not a proper guard or protection between the wagon road and the sidewalk for foot passengers. If it were not for the act of Assembly, to which reference has been made, the court would say to you that the plaintiff had not made out a case, nor had shown that the county was negligent inasmuch as want or repair has not been shown. In 1870 the legislature of this state enacted that the commissioners of Lehigh county were

authorized to erect foot sidewalks adjoining the stone bridge across the Jordan in Allentown—this bridge. The plaintiff took the position that this act of Assembly compelled the commissioners to build the sidewalk, and that because they did not do it the county was to be held liable in that the commissioners were negligent. The defendant took the ground that it was left discretionary with the commissioners to exercise their own judgment, whether the sidewalk was necessary or not, and that it was not for this court nor for you jurors to say whether it was necessary or not; that the law lodged that discretion with the commissioners. The court rule against both parties as respects these several positions. The view the court entertain and instruct you to follow on this point, is this: That it was not the absolute duty of the commissioners, after the passage of the act of 1870, to build a sidewalk or sidewalks, but they had the authority and the privilege and the power to do so, and that if the bridge as it was then, and as it was in 1883, was insufficient so as reasonably to accommodate the ordinary travel, and the building of the sidewalk thus became necessary in order to accommodate the public travel, then you may say that negligence has been shown. . . . .

The county, it seems, maintained this bridge up to 1883 as it had been for many years. They had the authority to build a sidewalk. You are to consider that and you are to consider the travel, which it is shown there was in 1883 at this bridge in question. Also the uses to which it was ordinarily put. Then you are to ask yourselves the question whether it has been shown that the county should before 1883 have built this sidewalk, and whether the omission to do so was negligence. If it is not shown that the county was negligent in leaving the bridge in the condition it was, then the plaintiff has no case, although she may have been hurt. In that event you will then return a verdict for the defendant.

As I said before, in passing upon this question you will consider the public wants respecting this bridge, the amount of travel that was ordinarily there and the kind of travel.

Those who are required to provide roads and bridges are to provide only in a reasonable way for ordinary travel. While it has been argued to you that such authorities are not required to prevent accidents from runaways, the court say to

you that you will consider, in passing upon this question of negligence or no negligence at the place where this happened, whether or not it was the duty of the commissioners to provide such safeguards at this place as would have prevented this injury, even although it occurred from a runaway. In other words, there may be places in remote districts of the county, or in small towns, or in streets in large towns, where it could not be reasonably required that guards should be put up along a bridge or between the sidewalk and the wagon road. At many places it could not be said that it was reasonably necessary that there should be any footwalk at all, separate from the wagon road, while at other places where the travel was great and other circumstances concurred, it might be said there ought to have been a footwalk, and that the travel was such that there ought to be some guard or protection between the footwalk and the wagon road. I have said to you that there may be places where this is necessary. I qualify that word by saying that it is for you to say whether it was necessary here or not. . . . .—

Both parties excepted to the charge of the court and the answers to the said points, and, the verdict being for the plaintiff for $770.83, the defendant took this writ, assigning that the court erred in refusing to charge the jury that under all the evidence the verdict should be for the defendant.

*Mr. C. J. Erdman* for the plaintiff in error:

1. The act of 1870 is not mandatory, and the failure to build as authorized thereby, negligence.

Nothing in its language directs the present or future compliance with it. Such directions must therefore be found as a rule of construction. It is said in Whart. Neg. 263, and Dill. Mun. Cor. 936, that the distinction between the legislative or judicial and the ministerial duties of a municipal corporation is plain in theory, but oftentimes difficult of application to particular cases. Ministerial duties are such as are absolute, certain and imperative; per DENIO, C. J., in Mills v. Brooklyn, 32 N. Y. 489.

A municipal corporation is not liable either for the non-exercise of, or for the manner in which in good faith it exercises, discretionary powers of a public or legislative charac-

ter. Such powers are conferred to be exercised or not as the public interest is deemed to require, and there is no implied liability for deciding either that the public interest does not require action, or that it requires action in a particular way: Dill. Mun. Cor. 862; Carr v. Northern Liberties, 35 Penn. St. 324; Grant v. City of Erie, 69 Idem 420; Com. ex rel. v. Henry, 49 Idem 530; Julius v. Bishop of Oxford, L. R. 5 App. Cas. 222.

It was conceded by court and counsel below that there was no authority in the commissioners to widen or build additions to the bridge, outside of the act of 1870. In England, public bridges are repairable by the county, but this duty does not oblige a county to widen bridges: Ang. High. § 257. In Pennsylvania, the duty and liability as to maintaining highways and bridges in repair is statutory: Rapho v. Moore, 68 Penn. St. 404.

2. Even if the authorities were negligent, can recovery be had where the injury is occasioned by unmanageable and runaway horses coming upon the pavement?

The rule is stated by Whart. Neg. § 104: When a horse becomes violently and extraordinarily unmanageable, so as to dash out of the beaten track upon the edges of the road, this is one of those extraordinary accidents of travel not in the contemplation of the road-builder, and for the consequences of which the town is not liable: Marble v. Worcester, 4 Gray 395.

Hey v. Philadelphia, 81 Penn. St. 44, it is contended is an authority sustaining the position of the plaintiff. That case is certainly at variance with the authorities in Maine and Massachusetts, where it is held that no recovery can be had for an accident occasioned by a frightened or vicious horse, although it might not have occurred but for a defect in the highway where the horse was injured: Davis v. Dudley, 4 Allen 557; Titus v. Northbridge, 97 Mass. 258; Fogg v. Nahant, 98 Idem 578; Moulton v. Sanford, 51 Me. 127; Moore v. Abbott, 32 Idem 66. Whart. Neg. § 104, in commenting on Hey v. Philadelphia says: " This ruling can be sustained on the ground that, in view of the liability of horses to take fright at the locomotives passing in close proximity,

so dangerous a precipice as that on the right should have been fenced off." But that case is essentially different from this.

*Mr. John Rupp* (*Mr. James B. Deshler* with him), for the defendant in error:

1. We contend that the act of 1870 was mandatory, and that a failure to comply with its provisions and to erect a sidewalk within a reasonable time was *per se* negligence.

This contention is based upon the well-known rule of construction that words of power or of authority in a statute must be construed as imperative or mandatory where a power or authority is conferred in the execution of which the public are interested, or where the statute enacts the doing of a thing for the sake of justice or the public good when the public interests are concerned, or where the public or third persons have a claim *de jure* that the power shall be exercised. In such cases, words of authority in a statute are construed to be words of command: Mason v. Fearson, 9 How. 248, see pages 259, 260; Supervisors v. United States, 4 Wall. 435; Com. ex rel. v. Pittsburgh, 34 Penn. St. 496, p. 513; Shaeffer v. Jack, 14 S. & R. 426; Commonwealth v. Gable, 7 Idem 423; Commonwealth v. Marshall, 3 W. N. 182.

2. But, if the duty to build the sidewalk was not absolutely imposed by the statute, still the statute conferred the power and authority to build it, and, if the bridge was insufficient and unsafe to accommodate the public travel under the circumstances and the manner in which it was used, it then became a duty to build, and the failure to do so was negligence, which is defined to be the absence of care according to circumstances: F. & B. Turnpike Co. v. Railroad Co., 54 Penn. St. 345; Rapho v. Moore, 68 Idem 404.

The jury found that the bridge was insufficient, dangerous and unsafe, and that the failure to build a sidewalk with proper guards was negligence, and that this negligence caused the injury; and there was liability notwithstanding the injury occurred through an accident caused by runaway horses: McCormick v. Township, 112 Penn. St. 185; Hey v. Philadelphia, 81 Idem 44; Scott Township v. Montgomery, 95 Idem 444; Newlin Township v. Davis, 77 Idem 317;

Lower Macungie Township v. Merkhoffer, 71 Idem 276; Borough of Pittston v. Hart, 89 Idem 389.

3. This negligence in the failure to build was the proximate cause of, the injury to the plaintiff: Penn. R. Co. v. Hope, 80 Penn. St. 373; Borough of Pittston v. Hart, 89 Idem 389; Hey v. Philadelphia, 81 Idem 44; Scott Township v. Montgomery, 95 Idem 444; Newlin Township v. Davis, 77 Idem 317; Lower Macungie Township v. Merkhoffer, 71 Idem 276.

OPINION, MR. JUSTICE CLARK:

On the 5th day of October, 1883, the plaintiff, whilst passing over the bridge across Jordan creek and meadows in the city of Allentown, was caught by the wheel of a wagon drawn by a runaway team of horses, and injured. The bridge is about six hundred feet long and twenty-six feet wide; the City Passenger Railway occupying eight feet on one side, the wagon road fourteen feet on the centre, and the footwalk four feet on the other side. It is a stone structure, and is conceded to have been originally constructed and since maintained as a county bridge. The plaintiff at the time of the injury was on the footway, which was not separated from the cart way or wagon road by any guard or rail, but merely by a stone curb six inches in height. As the team of runaway horses approached her, she leaned over the parapet of the bridge to escape harm, but the hub of the wheel struck her a severe blow in the back, and this suit is brought to recover damages from the county of Lehigh for the injuries sustained.

It is not pretended that the injury complained of resulted from any want of repair or defect in the bridge. It is said, however, that the bridge was insufficient; that it was too narrow; that there was not a sidewalk of adequate width for foot passengers, and that the sidewalk was not properly protected by a rail or guard from the vehicles on the wagon road.

The bridge was erected half a century ago when Allentown was but a small country village situate wholly on one side of Jordan creek, and it is not improbable that owing to the rapid growth of the city and the great increase of its population, the bridge has not now the capacity to accommodate the public in as full and ample manner as might be desired; but it is shown to be a solid stone bridge in proper condition of repair, and in

Opinion of the Court

all respects substantial and secure.  The county commissioners have maintained the bridge as it was originally designed and constructed; all the requirements of the law were satisfied in its original approval, and the duty of the commissioners was discharged in the proper maintenance of the structure according to its original design.  It must certainly be conceded that the county of Lehigh is not now to be convicted of negligence, because the commissioners, in the exercise of a proper discretion, failed to anticipate the growth of the city, or, in the exercise of that discretion, have failed to determine the necessity for a new bridge or for such additions or improvements as may be supposed to be necessary to meet the demands of a greatly increased travel upon it.  Nor can it be said that the commissioners should have anticipated that horses would become frightened and unmanageable on the wagon road, and would break away from control on the bridge and that injuries might thereby be inflicted on the foot passengers.  It is unreasonable to suppose that such a condition of things should have been foreseen as the result of their failure and neglect to erect a rail or barrier above the curb.  As well, indeed with much more propriety, might we hold the city of Philadelphia bound to erect barriers on either side of Chestnut street, to protect the people who from day to day throng the sidewalks of that street.  Runaway horses are liable to come upon the pavement in all streets, and the authorities are not bound to guard against this mere possibility.

But it is said that by a special act of Assembly approved in the year 1870, an absolute duty was imposed upon the county of Lehigh to provide a larger accommodation to foot passengers on this bridge.  By this statute it is enacted : " That the commissioners of Lehigh county are hereby authorized to erect foot sidewalks, adjoining the stone bridge crossing Jordan creek at the Hamilton street crossing, in the city of Allentown, county of Lehigh, Pennsylvania, at the cost and expense of the county."

It is plain that the language employed by the legislature in the draft of this bill is not essentially of a mandatory character. If the provision is held to be imperative, it must be upon some rule of construction which will impart to the words an interpretation beyond their usual and ordinary signification.  The

county commissioners were by the express terms of the act simply "authorized," not required, to erect foot sidewalks adjoining the stone bridge at the cost and expense of the county. No time was indicated within which the work was to be performed, nor is 'the manner or method of the performance in any way prescribed, or any particular fund in the immediate control of the state appropriated to the purpose. The matter is left wholly to the judgment and discretion of the county commissioners, who, as the representatives of the people and of the public in the administration of the affairs of the county, might be supposed to have especial facilities for knowing, not only when the public interests required, but when the county was prepared, to undertake the proposed improvement; and the legislative intent doubtless was, that the powers conferred would be exercised at such time and in such manner as the public interests would require and the ability of the county would permit, and of this the commissioners were to judge.

A municipal corporation is not liable to an action for damages for the non-exercise of discretionary powers of a public character: Dillon on Municipal Corporations, 753. The general rule in such cases is thus stated in Carr v. Northern Liberties, 35 Penn. St. 324: "Where any person has a right to demand the exercise of a public function, and there is an officer or set of officers authorized to exercise that function, there the right and the authority give rise to the duty; but when the right depends upon the grant of authority, and that authority is essentially discretionary, no legal duty is imposed." Therefore it was held that an action would not lie against a municipal corporation invested with the power to construct sewers for neglecting to construct a proper system of drainage, in consequence of which a citizen's store was overflowed and his goods damaged. "We do not admit," said Chief Justice LOWRIE, "that the grant of authority to the corporation to construct sewers amounts to an imposition of a duty to do it." To the same effect is Grant v. City of Erie, 69 Idem 420.

The case of Goodsale v. City of Chicago, 20 Ill. 445, is directly in point. The city of Chicago, among other powers, had express authority to remove all obstructions in the harbor, but it was held, that if the city had never undertaken to exer-

cise the power, it was not liable to a party who had sustained damage from a sunken hulk remaining there. If, however, says CATON, J., the city had entered upon the work of removing the hulk, and in doing so had carelessly left it in an exposed condition, by reason of which the navigator's vessel was injured, it would be liable for such negligence. So, too, we apprehend if the county of Lehigh had actually undertaken the erection of the footwalk outside of the bridge, it would have been liable for injuries from the negligent performance of the work. But as the work was never undertaken, no such question arises.

The learned court instructed the jurors that, apart from the special statute of 1870, no negligence of the county was shown, and that under the statute it was not the absolute duty of the county to build the footwalks on the outside of the bridge; yet notwithstanding this, that inasmuch as the commissioners had the authority to do so, if they (the jurors) believed the bridge was insufficient reasonably to accommodate the travel and in their judgment the sidewalks were necessary for the public accommodation, they might find the county guilty of negligence. This was simply substituting the discretion of jury for that of the commissioners, and in the light of the authorities we have cited was clear error.

The judgment is reversed.