## Weindorf v. French, Commissioner, et al.

*John Y. Scott* and *Maurice J. Coughlin,* for petitioner.

*Harrington Adams,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for defendants.

HARGEST, P. J., April 22, 1940.—This matter comes before us upon a petition for mandamus directed to the Board of Fish Commissioners of the Commonwealth to require them to issue to plaintiff a license to engage in trap fishing in Lake Erie.

Petitioner avers that he is a resident of the City of Erie and has made written application for such license, tendering the fee required under the act, and that his license was refused. He avers that, under section 90 of The Fish Law of May 2, 1925, P. L. 448, as amended by the Act of July 17, 1935, P. L. 1145, the provision entitling him to a license is mandatory.

The return of the Board of Fish Commissioners shows that under date of January 1, 1936, the board issued a regulation as follows:

"No additional trap net licenses will be granted during the year 1936 other than to such applicants who are on record as having trap net licenses issued to them during the year 1935. It is further provided that such applicants as of record of 1935, shall not be allotted any increase in the number of trap net licenses in excess of the record as shown for 1935. After December 31, 1936, trap nets will be discontinued. This will be strictly enforced."

The answer avers that the power in the Fish Commissioner as to such licenses is discretionary and not mandatory, and that petitioner has no property right or interest in a trap-net fishing license.

Petitioner is in the proper forum to have the question decided. If his contention is right, mandamus is his remedy: Soble et al. v. State Board of Pharmacy, 560 Commonwealth docket, 1939, opinion of this court, April 3, 1940. Even then, mandamus is not a matter of absolute right and would not be granted where the public interest would be injuriously affected: Gold v. Building Committee of Warren Borough et al., 334 Pa. 10; Sinking Fund Commrs. of Phila. v. Philadelphia et al., 324 Pa. 129.

The precise question for us to determine is whether the statute is mandatory and requires the Board of Fish Commissioners to issue this license. The particular provision of section 90 of The Fish Law, as amended, supra, above referred to, is:

"The Board is hereby authorized to issue a fishing license, upon written application therefor signed by the applicant, upon payment of the license fee herein prescribed for the respective fishing devices or persons; that is to say, for each . . .

"(f) Trap-net or device other than a pound-net, resident citizens, not less than ten dollars nor more than twenty dollars; non-resident citizens of the United States, not less than twenty dollars nor more than forty dollars; to be determined and fixed by the Commissioner."

It is contended that the word "authorized" must be used in the mandatory sense. That word may have two meanings: 6 C. J. 865; Lehigh County v. Hoffort, 116 Pa. 119. Therefore, recourse must be had to the other provisions of the law to determine what was the legislative intention.

Section 2702 of The Administrative Code of April 9, 1929, P. L. 177, 71 PS §692, provides:

"The Board of Fish Commissioners shall have the power, and its duty shall be:

"(a) To administer and enforce the laws of this Commonwealth relating to the encouragement, promotion, and development of the fishery interests and the protection, propagation, and distribution of fish;

"(b) To make rules and regulations not inconsistent with law for the enforcement of the laws relating to the protection, propagation and distribution of fish, and for the angling, catching, or removal of fish in or from any waters, artificial or otherwise, wholly within this Commonwealth, or in waters lying between this Commonwealth and any other State, or in the waters of such part of any lake of more than five thousand acres lying be-

tween this Commonwealth and any other State or foreign country as is within the jurisdiction of this Commonwealth."

Section 100 of The Fish Law of 1925, supra, provides:

"The Commissioner, with the approval of the Board, may make such rules and regulations applicable to any boundary lake, as hereinbefore defined, as he may deem necessary for the protection of fish in such waters."

Section 251 of The Fish Law of 1925, as amended by the Acts of May 25, 1937, P. L. 801, and June 24, 1939, P. L. 834, 30 PS §251, provides in part as follows:

"The Commissioner, with the approval of the Board, may promulgate such rules and regulations for the angling, catching, or removal of fish in or from any of the inland waters, artificial or otherwise, and the boundary lakes and boundary rivers of this Commonwealth, as he may deem necessary."

Then follows the authority of the board to reduce, increase, close, or open seasons as in its judgment may be necessary to conserve the future fish supply.

Taking the foregoing provisions of the law together, it seems clear that the legislature intended to give the Board of Fish Commissioners a wide discretion as to the administration of the laws for the "encouragement, promotion, and development of the fishery interests and the protection, propagation, and distribution of fish". And, necessarily, no hard and fast statutory rules could be laid down by the legislature as to what should be done for the protection of fish. The very nature of the industry and the sport depends upon weather conditions, stocking conditions, the number of fishermen, the size of catches, and other matters that may tend either to enlarge or decrease the fish supply. So that when the legislature "authorized" the board to issue a "trap-net" license it would be a construction which seems to be directly contrary to the legislative intention to hold that the hands of the board were tied and everybody who paid the fees fixed by the commissioner should be entitled to a license.

We are of opinion that that is quite contrary to the legislative intention to be gathered from both The Administrative Code and The Fish Law of 1925, as amended.

It is contended that section 251 of The Fish Law, above partly quoted, refers only to seasons, and that it applies to game fish and not to white fish which are not game fish. The part of section 251 which we have quoted gives the commissioner, with the approval of the board, the right to promulgate "rules and regulations for the angling, catching, or removal of fish."

The resolution complained of is a resolution regulating the removal of fish. It is not confined in terms to game fish and we can see no rule of construction which would justify it being so confined. The provision quoted does not refer to seasons, although the rest of section 251 does. But there is no reason why the court should limit the whole section to seasons since the sentence quoted is self-explanatory without such limitation. Moreover, section 100, above quoted, gives the right to make rules for Lake Erie "for the protection of fish in such waters."

The Fish Law has inherent evidence that the legislature knew how to use mandatory language when it intended that the licensing provision should be mandatory. Section 220 provides for resident fishing license fees and requires that upon complying with the qualifications therein set out, "every person . . . shall . . . be entitled to the license herein referred to as 'a resident fishing license.' " By section 90 the board is "authorized" to issue a trap-net license.

In the brief furnished by counsel for petitioner it is stated that the board passed the following resolution May 10, 1937:

"Trap Nets—Lake Erie—Vote unanimous. That the final decision of the board would be that trap nets are abolished from Lake Erie."

While this is not officially brought upon the record either by the petition or the return, it is consistent with the regulation of January 1, 1936, set out in the return, and

indicates that for the protection of fish in Lake Erie the board has concluded that trap nets should be, for the present at least, abolished.

In the case of Lehman et al. v. Pennsylvania Game Comm. et al., 34 D. & C. 662, Judge Niles, for this court, passed upon the discretion vested in the Game Commission by The Game Law of June 3, 1937, P. L. 1225. He said, among other things, at page 670:

"The case presented is not one in which any private right is alleged to be infringed; and is not governed by such decisions at Holgate Brothers Co. et al. v. Bashore et al., 331 Pa. 255. . . . This legislation for the conservation of public property is an exercise of the police power inherent in the sovereign. No private rights are involved. The commission makes no new law. It determines the conditions outlined within the limits of the law, and pursuant to such determination promulgates its orders. . . . Such authorized administrative orders, auxiliary to such purely police regulations of public property, are no more open to trial than the legislation authorizing them. If this be correct, it is incompetent for the court to enter into the wisdom of the order, or reinvestigate the conditions which led the commission to arrive at its duly-announced judgment. Plaintiffs are allowed a privilege to be exercised under such conditions as may be imposed by the administrative agency of the Commonwealth. It is not competent for such licensees to invoke the interposition of the court to determine whether the duly-arrived-at and publicly-announced judgment of the Game Commission is, under the circumstances, wise. Such a practice would lead, as illustrated by the case before us, to confusion and would be practically impossible."

We think this language is applicable to the present case, and we are of opinion from what we have already said that the Board of Fish Commissioners has a discretion to issue, or refuse to issue, the licenses for using trap nets in Lake Erie.

And now, April 22, 1940, the alternative writ of mandamus heretofore issued is quashed and the petition for mandamus dismissed at the cost of petitioner.