Greer, Appellant, *v.* Metropolitan Hospital, et al.

Argued March 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James E. Beasley*, with him *Jeffrey M. Stopford*, and *Beasley, Hewson, Casey, Kraft & Colleran*, for appellant.

*Joseph H. Foster*, with him *Thomas J. Ziomek*, and *White and Williams*, for appellees.

OPINION BY JACOBS, J., June 24, 1975:

In May of 1966 the appellant was working on property owned by the Redevelopment Authority of the City of Philadelphia when a fire escape collapsed. The appellant commenced this trespass action to recover damages for his personal injuries and permanent disability which resulted from the accident. Over eight years later as the case was listed for trial, the Redevelopment Authority filed a motion for summary judgment[1] asserting the defense of sovereign immunity under *Brown v. Common-*

---

1. Pa.R.C.P. 1035, based upon an affirmative defense properly asserted in its answer.

*wealth.*[2] The appellant opposed the motion contending that the Redevelopment Authority was cloaked only with governmental immunity, which was abolished in *Ayala v. Philadelphia Board of Public Education.*[3] The lower court granted the motion for summary judgment and this appeal followed.

The sole issue presented in this case and a companion case involving the Redevelopment Authority of Pittsburgh decided this same day[4] is whether the Redevelopment Authority, as a unit of government, is cloaked with "governmental immunity," thus subjecting it to liability under *Ayala* or "sovereign immunity," thus precluding liability under *Brown.* We conclude that the former assertion is correct and reverse the order below.

The decisions of our Supreme Court have repeatedly chronicled the origin, development, faltering vitality[5] and eventual demise[6] of immunity doctrines in this Commonwealth. The Commonwealth, as a sovereign, "cannot be sued against her consent;" *Monongahela Navigation Co. v. Coons,* 6 W. & S. 101, 113 (Pa. 1843),[7] and remains

---

2. 453 Pa. 566, 305 A.2d 868 (1973) [hereinafter cited as *Brown*].

3. 453 Pa. 584, 305 A.2d 877 (1973) [hereinafter cited as *Ayala*].

4. *School District v. Trumbull Corp.,* 235 Pa. Superior Ct. 412, 341 A.2d 528 (1975).

5. *See, e.g., Biello v. Pennsylvania Liquor Control Bd.,* 454 Pa. 179, 301 A.2d 849 (1973) (dissenting opinion of Justice NIX); *Laughner v. Allegheny County,* 436 Pa. 572, 261 A.2d 607 (1970) (dissenting opinions of Justices ROBERTS and POMEROY).

6. *See, e.g., Ayala v. Philadelphia Bd. of Public Educ.,* 453 Pa. 584, 305 A.2d 877 (1973) ("governmental immunity"); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (abolishing parent-child immunity); *Flagiello v. Pennsylvania Hosp.,* 417 Pa. 486, 208 A.2d 193 (1965) (abolishing charitable immunity).

7. *See Black v. Rempublicam,* 1 Yeates 140 (Pa. 1792); *Respublica v. Sparhawk,* 1 Dallas 357 (Pa. 1788).

immune from suit under article I, section 11 of the Pennsylvania Constitution. *Brown,* supra. Local units of government also historically enjoyed immunity from tort liability. Apparently originating in the English case of *Russell v. Men of Devon,* 100 Eng. Rep. 359 (K.B. 1788),[8] the doctrine was adopted in this country in 1812,[9] and in this Commonwealth at least by 1888.[10] The immunity

8. It is possible to ascribe an earlier origin to the doctrine of immunity for governmental units. Lord Kenyon, Chief Justice, writing the decision in *Men of Devon,* referred to a case cited in Brooke's Abridgment:

"Therefore, I think that this experiment ought not to be encouraged; there is no law or reason for supporting the action; and there is precedent against it in Brooke; though even without that authority I should be of the opinion that this action cannot be maintained."

100 Eng. Rep. 359, 362 (K.B. 1788). The precedent referred to in Brooke is of early origin. Brooke died in 1558. *See Maffei v. Incorporated Town of Kemmerer,* 80 Wyo. 33, 338 P.2d 808 (1959); Comment, *Judicial Abrogation of Governmental and Sovereign Immunity: A National Trend With A Pennsylvania Perspective,* 78 Dick.L.Rev. 365 (1973).

9. *Mower v. Inhabitants of Leicester,* 9 Mass. 247, 250 (1812) ("quasi-corporations, created by the legislature for purposes of public policy, are subject, by the common law, to an indictment for the negligence of duties enjoined on them; but they are not liable to an action for such neglect, unless the action be given by some statute...") (*citing Russell v. Men of Devon*); *see Riddle v. Proprietors of the Locks and Canals on Merrimac River,* 7 Mass. 169 (1810) (dicta).

10. The Court in *Ayala* cites *Ford v. Kendall Borough School Dist.,* 121 Pa. 543, 15 A. 812 (1888), as establishing the doctrine in Pennsylvania. *See also,* as contributing to the development of the doctrine in the Commonwealth, *Fox v. Northern Liberties,* 3 W. & S. 103 (Pa. 1841) (act of employee far outside'scope of authority); *Carr v. Northern Liberties,* 35 Pa. 324 (1860) (liability not imposed on tortious performance of discretionary function); *Alcorn v. City of Philadelphia,* 44 Pa. 348 (1863) (doctrine of respondeat superior held not to apply to appointed officers of municipal corporations); *Elliott v. City of Philadelphia,* 75 Pa. 347 (1874)

of local governmental units, however, was not absolute. Liability existed for failure to maintain roads,[11] bridges,[12] and sidewalks;[13] in actions based upon improper management and use of municipal property, *Briegel v. City of Philadelphia,* 135 Pa. 451, 19 A. 1038 (1890); and in cases in which the function was determined to be "proprietary" as opposed to "governmental." *E.g., Shields v. Pittsburgh School Dist.,* 408 Pa. 388, 184 A.2d 240 (1962); *Stouffer v. Morrison,* 400 Pa. 497, 162 A.2d 378 (1960); *Morris v. Mt. Lebanon Twp. School Dist.,* 393 Pa. 633, 144 A.2d 737 (1958); *Hill v. Allentown Housing Auth.,* 373 Pa. 92, 95 A.2d 519 (1953).

The distinction between those local units of government to which the governmental-proprietary concept applied, and the Commonwealth was not enunciated as "governmental immunity" versus "sovereign immunity" until the Supreme Court's decisions in *Ayala* and *Brown.*[14] The Court in *Ayala* abolished "governmental

---

(intentional torts); *School Dist. v. Fuess,* 98 Pa. 600 (1881) (negligence of independent contractor); *County of Lehigh v. Hoffort,* 116 Pa. 119, 9 A. 177 (1887) (failure to exercise discretionary powers). *See* Comment, supra n. 8 at 376.

11. *Dean v. New Milford Twp.,* 5 W. & S. 545 (Pa. 1843).

12. *Rapho v. Moore,* 68 Pa. 404 (1871).

13. *McCormick v. Allegheny County,* 263 Pa. 146, 106 A. 203 (1919).

14. Prior to *Ayala* and *Brown* the terms had been used interchangeably. In *Conrad v. Commonwealth,* 441 Pa. 530, 272 A.2d 470 (1971), Chief Justice BELL, writing for a unanimous Court, identified the immunity enjoyed by the Commonwealth Department of Highways as "governmental immunity," and brought within its perimeters not only those cases clearly (and in one instance specifically) overruled by *Ayala,* but also cases falling within the *Brown* concept of "sovereign immunity." *See Sweigard v. Pennsylvania Dept. of Transp.,* 454 Pa. 32, 309 A.2d 374 (1973) (immunity of Commonwealth departments is "sovereign immunity.") Similarly, Justice NIX, dissenting in *Biello v. Pennsylvania Liquor Control Bd.,* 454 Pa. 179, 301 A.2d 849 (1973), included with his

immunity," that is, the immunity formerly enjoyed by "local governmental units—municipal corporations and quasi-corporations . . ." *Id.* at 607, 305 A.2d at 889. Our courts have since ruled that such local governmental units as cities,[15] boards of education,[16] townships[17] and counties[18] are no longer immune from liability. *Brown,* in which the Court sustained the doctrine of "sovereign immunity," has since been followed in suits against Commonwealth employees,[19] Commonwealth Departments,[20] Boards,[21] Commissions,[22] and Colleges.[23]

use of "sovereign immunity" cases which would now fall within the "governmental immunity" rule of *Ayala.*

15. *Laughlin v. Pittsburgh,* 226 Pa. Superior Ct. 431, 310 A.2d 289 (1973). *Smeltz v. City of Harrisburg,* 440 Pa. 224, 269 A.2d 466 (1970), was specifically overruled by *Ayala.*

16. *Kitchen v. Wilkinsburg School Dist.,* 455 Pa. 633, 306 A.2d 294 (1973); *Ayala,* which involved the Philadelphia Board of Pub. Educ., specifically overruled *Dillon v. York County School Dist.,* 422 Pa. 103, 220 A.2d 896 (1966) and other similar cases.

17. *Klein v. Cheltenham Township,* 309 A.2d 353 (1973). *Boorse v. Springfield Township,* 377 Pa. 109, 103 A.2d 708 (1954) was specifically overruled by *Ayala.*

18. *Edwell v. Allegheny County,* 226 Pa. Superior Ct. 429, 310 A.2d 340 (1973).

19. *Hall v. Power,* 455 Pa. 645, 311 A.2d 612 (1973), *aff'g* 6 Pa. Commonwealth Ct. 544, 296 A.2d 535 (1972); *Brown* (National Guard employee).

20. *Sweigard v. Pennsylvania Dept. of Transp.,* 454 Pa. 32, 309 A.2d 374 (1973); *Williams v. Commonwealth,* 12 Pa. Commonwealth Ct. 384, 316 A.2d 685 (1974) (Department of Labor and Industry and Department of Health); *see DuBree v. Commonwealth,* 8 Pa. Commonwealth Ct. 567, 303 A.2d 530 (1973) (Department of Highways) (decided prior to *Brown*).

21. *Koynok v. Commonwealth,* 12 Pa. Commonwealth Ct. 375, 316 A.2d 118 (1974) (State Board of Private Academic Schools); *see Biello v. Pennsylvania Liquor Control Bd.,* 454 Pa. 179, 301 A.2d 849 (1973) (decided prior to *Brown*); *McCoy v. Liquor Con-*

As stated earlier, the question with which this Court is presented is whether the Redevelopment Authority is identified with municipal and quasi-municipal corporations or whether it is identified as the Commonwealth itself. It is important, therefore, to examine the nature of authorities in general and the Redevelopment Authority in particular and to abstract the characteristics or attributes important to its classification. The Redevelopment Authority was created pursuant to the Urban Redevelopment Law of 1945.[24] The legislature determined that there existed in "urban communities in this Commonwealth" areas which had become blighted, §1702(a), that such conditions would be harmful to the "well-being of the entire communities in which they exist," §1702(b), and that such blight could not be adequately controlled by regulation or private enterprise. *Id.* §1702(c). Therefore, the legislature created "Redevelopment Authorities," §1702, each of which is designated as "a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof . . ." *Id.* §1709. The Redevelopment Authorities exist and operate to eliminate blighted conditions "in conformity with the comprehensive general plans of their respective municipalities." *Id.* §1702. Although the Act "created" a separate and distinct redevelopment authority for each city and county, §1704(a), no authority can become operative "until and unless" the local governing body declares by

*trol Bd.*, 9 Pa. Commonwealth Ct. 107, 305 A.2d 746 (1973) (decided after *Brown*, but without citation thereto).

22. *Kreider v. Commonwealth*, 9 Pa. Commonwealth Ct. 491, 308 A.2d 642 (1973) (Pa. Human Relations Comm'n) (decided after *Brown*, but without citation thereto).

23. *Brungard v. Hartman*, 12 Pa. Commonwealth Ct. 477, 315 A.2d 913 (1974) (Mansfield State College).

24. Act of May 24, 1945, P.L. 991, §1 *et seq., as amended*, 35 P.S. §1701 *et seq.* (1964).

appropriate ordinance or resolution "that there is a need for an Authority to function within the territorial limits of said city or county . . ." *Id.* §1704(b). Authority members are appointed by the mayor or board of county commissioners, §1705, serve without compensation, §1706, and may not acquire any interest, direct or indirect, in any property, contract or redevelopment project. *Id.* §1708. An Authority's redevelopment proposals are submitted to the local planning commission for approval, §1710(e), and subsequently to the local governing body, §1710(f), which holds hearings, §1710(g), and either approves or rejects the proposal. *Id.* §1710(h). If the local governing body approves the redevelopment proposal, the authority is authorized to take all necessary action. *Id.* §1710(i). Its power of eminent domain is the same as that of the city or county which organizes the authority. *Id.* §1712. The authority must submit to the Department of State a copy of its forming ordinance or resolution, §1704(c), must keep its books and records open to inspection by the Department of Community Affairs and file therewith an annual report. *Id.* §1719 (Supp. 1974-75). Beyond such report, an authority is under no obligation or duty to consult, advise, confer, or communicate with the Commonwealth or any department thereof.

It is clear from the statutory and case law that an authority is termed an agent of the Commonwealth and not of the local governing body. "An authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof . . .;" *id.* §1709, it "shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function." *Id.* §1704(a). "The Authority is a public body exercising public powers of the Commonwealth as an agency thereof." *Schwartz v. Urban Redevelopment Auth.*, 411 Pa. 530, 536, 192 A.2d 371, 374 (1963); *see Belovsky v. Redevelopment*

*Auth.,* 357 Pa. 329, 54 A.2d 277 (1947). "[A]n authority is not the creature, agent or representative of the municipality organizing it," *Simon Appeal,* 408 Pa. 464, 467, 184 A.2d 695, 697 (1962), it is "a corporate agency of the state, and not the child of a municipality . . ." *Id.* at 470, 184 A.2d at 698. "[M]unicipal authorities are not the creatures, agents or representatives of the municipalities which organize them, but rather are 'independent agencies of the Commonwealth and part of its sovereignty.' " *Commonwealth v. Erie Met. Transit Auth.,* 444 Pa. 345, 348, 281 A.2d 882, 884 (1971).

Reviewing the language used prior to the crystallization of the immunity doctrines in *Brown* and *Ayala,* however, we find it singularly unpersuasive. For instance, the Court in *Anderson Appeal,* 408 Pa. 179, 182 A.2d 514 (1962) in holding the Delaware River Port Authority immune from suit, described it as "a vital arm of the Commonwealth." *Id.* at 184, 182 A.2d at 517. Justice EAGEN, concurring in *Dillon v. York City School District,* 422 Pa. 103, 220 A.2d 896 (1966) held that "[a] school district is both constitutionally and legislatively an arm of the Commonwealth itself . . . As such, the defendant school district is shielded by the sovereign immunity of the Commonwealth, as well as the doctrine of governmental immunity." *Id.* at 108, 220 A.2d at 898-99. *Dillon* was specifically overruled by *Ayala,* whereas *Anderson* retains its vitality.[25] In *Ayala,* the Court held that the labeling of quasi-corporations as "agencies" of the Commonwealth would not protect them from suit.

"The notion that the immunity of the school district is linked to the sovereign immunity of the Commonwealth . . . is a notion without present vitality. Underlying this assumption is the theory that there is a distinction between municipal corporations and

---

25. *See Yancoskie v. Delaware River Port Auth.,* 235 Pa. Superior Ct. 263, 340 A.2d 533 (1975) ; *Enoch v. Food Fair Stores, Inc.,* 232 Pa. Superior Ct. 1, 331 A.2d 912 (1974).

quasi-corporations, the latter being agents of the Commonwealth and, thus, entitled to the sovereign immunity enjoyed by the Commonwealth.

"We expressly rejected this theory in *Morris v. Mount Lebanon Township School District* . . .[26]

"Thus, municipal corporations and quasi-corporations are on an equal level with regard to immunity." *Id.* at 601 n. 8, 305 A.2d at 885 n. 8 (citation omitted; footnote added).

Municipal corporations are not agencies of the Commonwealth in the sense that that term applies to quasi-corporations. *Id.* Nevertheless, in many cases discussing the immunity question, the Court has termed them State "agencies."[27] Indeed, if we were to feel constrained by the language employed prior to *Brown* and *Ayala* all "agents" of the Commonwealth including municipalities,[28] school districts,[29] counties,[30] townships,[31] bor-

---

26. The Court in *Morris v. Mount Lebanon Twp. School Dist.*, 393 Pa. 633, 144 A.2d 737 (1958) (specifically overruled by *Ayala*) held that a school district as an agency of the Commonwealth would be held liable to the same extent as a municipality. In *Hill v. Allentown Housing Authority*, 373 Pa. 92, 95 A.2d 519 (1953), cited in *Morris*, supra, the Allentown Housing Authority, held to be an "agency" of the Commonwealth, was nevertheless held liable to the extent of a municipality.

27. *E.g.*, *Shirk v. Lancaster City*, 313 Pa. 158, 162 n. 1, 169 A. 557, 559 n. 1 (1933); *Scibilia v. Philadelphia*, 279 Pa. 549, 553, 124 A. 273, 274 (1924).

28. *Id.*

29. *E.g.*, *Dillon v. York City School Dist.*, 422 Pa. 103, 220 A.2d 896 (1966) (specifically overruled by *Ayala*) ("a school district is both constitutionally and legislatively an arm of the Commonwealth itself"); *Slippery Rock Area Joint School System v. Franklin Twp. School Dist.*, 389 Pa. 435, 133 A.2d 848 (1957) ("an agency of the State, created by law for the purpose of promoting education, deriving all of its powers from the statute, and discharging only such duties as are imposed upon it by statute"); *Carlo v. Scranton School Dist.*, 319 Pa. 417, 179 A. 561 (1935)

oughs,[32] municipal authorities,[33] housing authorities[34] and parking authorities[35] would be cloaked with sovereign immunity; yet, they are not. It is thus clear that appellation and terminology are of little value in determining whether a particular entity is cloaked with "sovereign immunity" or the now discarded "governmental immunity." Indeed, the legislature in declaring authorities "agencies" of the Commonwealth most certainly had reasons other than immunity in mind.[36]

(specifically overruled by *Ayala*) ("a state agency, performing governmental functions").

30. *E.g., Chester County v. Philadelphia Elec. Co.*, 420 Pa. 422, 218 A.2d 331 (1966) ("merely a political subdivision of the Commonwealth; not a municipal corporation"); *Pennsylvania Turnpike Comm'n Land Condemnation Case*, 347 Pa. 643, 32 A.2d 910 (1943) (counties are "state agencies performing governmental functions").

31. *E.g., Plum Twp. Annexation Case*, 178 Pa. Superior Ct. 376, 116 A.2d 260 (1955) ("all municipalities are agents of the state").

32. *E.g., Darby v. Sharon Hill*, 112 Pa. 66, 4 A. 722 (1886) ("merely an agency instituted by the sovereign").

33. *E.g., Simon Appeal*, 408 Pa. 464, 184 A.2d 695 (1962) ("an independent agency of the Commonwealth").

34. Act of May 28, 1937, P.L. 955, §10, *as amended*, 35 P.S. §1550 (1964) ("exercising public powers of the Commonwealth as an agency thereof").

35. Act of June 5, 1947, P.L. 458, §5, *as amended*, 53 P.S. §345(a) (1974) ("exercising public powers of the Commonwealth as an agency thereof").

36. If an authority is nominally an agent of the Commonwealth, municipal taxes cannot be levied. *Wilkinsburg Borough v. Wilkinsburg Borough School Dist.*, 365 Pa. 254, 74 A.2d 138 (1950). Nor will an authority be bound by statutes and debt limitations applying to its incorporated municipality. *Simon Appeal*, 408 Pa. 464, 184 A.2d 695 (1962). Further, as nominal agents of the state, authorities *can* have a taxing power independent of the municipality. *Whitemarsh Twp. Auth. v. Elwert*, 413 Pa. 329, 196

None of the opinions in *Brown* or *Ayala*[37] specifically states which units of government fall within the "governmental immunity" doctrine as opposed to "sovereign immunity."[38] There are factors other than labels, however,

---

A.2d 843 (1964). Lastly, the nominal agency relationship retards constitutional defects regarding the nondelegation principle and others. *E.g., Price v. Philadelphia Parking Auth.*, 422 Pa. 317, 221 A.2d 138 (1966); *Chartiers Valley Joint Schools v. Allegheny County Bd. of School Directors*, 418 Pa. 520, 211 A.2d 487 (1965); *Dornan v. Philadelphia Housing Auth.*, 331 Pa. 209, 200 A. 834 (1938).

37. There are five opinions in *Brown*, two in *Ayala*.

38. The majority opinion in *Brown*, authored by Chief Justice JONES, speaks only of the "Commonwealth." However, the Chief Justice cites *Stouffer v. Morrison*, 400 Pa. 497, 162 A.2d 378 (1960), which in turn relied upon *Boorse v. Springfield Twp.*, 377 Pa. 109, 103 A.2d 708 (1954) which was specifically overruled by *Ayala*. Justice POMEROY, concurring in *Brown*, refers to "the Commonwealth and its agencies (sovereign immunity), *Brown* at 573, 305 A.2d at 872, but also speaks of "units of local government (governmental immunity)," *id.*, and "sovereign immunity (i.e., the immunity of the states as distinguished from that of political subdivisions)." *Id.* at 575, 305 A.2d at 873. Justice POMEROY cites the Restatement (Second) of Torts §895B (Tent. Draft No. 19, 1973) another section of which refers to the "unique dual character" of the "local government entity."

> "On the one hand it is a subdivision of the state, endowed with governmental functions and responsibilities. On the other hand it is a corporate body, capable of much the same acts as a private corporation, and having much the same special and local interests and relations, not shared by the state at large. It is, in other words, at the same time a government and a corporation." *Id.* at §895C, comment b.

Justice POMEROY cast the deciding vote in *Brown* and *Ayala*, and clearly enunciated his views on the doctrine of sovereign immunity. *Brown* at 575, 305 A.2d at 873. Had he intended in his opinion in *Brown* to limit his use of the term "political subdivision" to include only a distinct list of local governmental units it may be assumed that he would have done so. *See Commonwealth v. Erie Met. Transit Auth.*, 444 Pa. 345, 348 n. 4, 281 A.2d 882, 884 n. 4 (1971).

Justice ROBERTS, writing the majority opinion in *Ayala*, excludes from consideration "the sovereign immunity of the Com-

which serve as guideposts in this area.[39] The Court in *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A.2d 199 (1962), held that the turnpike commission was an instrumentality of the Commonwealth and in so doing emphasized its functional rather than nominal relationship to the Commonwealth. The Court, in distinguishing the turnpike commission from "political subdivisions," referred to several factors which render the turnpike commission "in many respects the alter ego of the Commonwealth." *Id.* at 617, 182 A.2d at 203. The Court noted that the Commonwealth retained direct control and supervision of the Turnpike, that all contracts and agreements had to be approved by the Department of Highways, that all construction was supervised by the Department of Highways, and that Turnpike employees are considered Commonwealth employees. *Id.* at 618-20, 182 A.2d at 203-04. It may also be noted that the members of the turnpike commission are appointed by the Governor with the advice and consent of the Senate.[40]

In another case decided the same year, *Anderson Appeal*, 408 Pa. 179, 182 A.2d 514 (1962), the Court was again presented with the issue of whether a governmental entity would be identified with the Commonwealth or its

monwealth," *Ayala* at 587 n. 2, 305 A.2d at 878 n. 2, and identifies the entities within the concept of "governmental immunity" as "political subdivisions," *id.* at 588, 305 A.2d at 879, "municipal corporations and quasi-corporations," *id.* at 589, 305 A.2d at 879, "governmental units," *id.* at 594, 305 A.2d at 882, "a governmental entity," *id.*, and "local governmental units." *Id.* at 596, 305 A.2d at 889.

39. *See Biello v. Pennsylvania Liquor Control Bd.*, 454 Pa. 179, 183-84, 301 A.2d 849, 851 (1973) ("The question of whether a particular action is one against the Commonwealth is not to be determined solely by reference to the nominal parties to the record.").

40. Act of May 21, 1937, P.L. 774, §4, 36 P.S. §652d (1961).

political subdivisions.[41] In concluding that the Delaware River Port Authority "is to all intents and purposes synonymous with the Commonwealth," *id.* at 188, 182 A.2d at 518, the Court again examined the substantive relationship with the Commonwealth. The Court noted that the Port Authority is "strictly controlled by and responsible to the legislatures and the governors of the two states,"[42] that the Authority acted through the Attorney General in condemning property, that purchase or condemnation would be done in the name of the Commonwealth and that the legislature intended to make the Authority "a vital arm of the Commonwealth." *Id.* at 184, 182 A.2d at 517.[43] The members of the Authority are appointed by the Governor.[44] The reasoning of *Rader* and *Anderson* was followed without discussion in *Roney v. General State Authority*, 413 Pa. 218, 196 A.2d 349 (1964).

It is apparent that utilizing the factors found to be determinative in *Rader* and *Anderson*, the Redevelopment Authority can be distinguished readily from the turnpike commission and the Port Authority. The essentially localized nature of the redevelopment authorities has been noted before.

---

41. In *Rader v. Pennsylvania Turnpike Comm'n*, 407 Pa. 609, 182 A.2d 199 (1962) the issue was whether the turnpike commission was liable for negligence in maintaining the highway as a municipality would be, *see Dean v. New Milford Twp.*, supra n. 11, or immune as is the Commonwealth. In *Anderson Appeal*, 408 Pa. 179, 182 A.2d 514 (1962), the issue was whether the Delaware River Port Authority was liable in eminent domain proceedings for consequential damages as are municipalities or not liable as is the Commonwealth.

42. *Anderson Appeal*, supra n. 41 at 184, 182 A.2d at 517, referring to the governors of the Commonwealth and the State of New Jersey.

43. *See* n. 25 supra.

44. Act of June 12, 1931, P.L. 575, §1, *as amended*, 36 P.S. §3503, art. II (Supp. 1974-75).

"[A]ll the powers given to the Authority ... are subject to the approval of the city council or the county commissioners, and only after all the details of the particular project are formulated is the ultimate decision made by those governing bodies ... The planning necessary to accomplish the purposes of the act must necessarily vary from place to place within the same city or county and from city to city and county to county." *Belovsky v. Redevelopment Auth.*, 357 Pa. 329, 342, 54 A.2d 277, 283 (1947).

The Court in *Schenck v. Pittsburgh*, 364 Pa. 31, 70 A.2d 612 (1950) described the procedures by which each authority proposal must be reviewed by the local governing body. "[T]he Urban Redevelopment Law was obviously intended to give wide scope to municipalities in redesigning and rebuilding such areas within their limits as ... no longer meet the economic and social needs of modern city life and progress ... It is for the Authority ... to decide upon the terms of their contract and for the City Council to approve or reject it ..." *Id.* at 37-38, 70 A.2d at 615. Thus, in actions against local redevelopment authorities it is the local governing body, not the Commonwealth, which is an indispensable party to the action. *Schwartz v. Urban Redevelopment Auth.*, 411 Pa. 530, 192 A.2d 371 (1963).

A municipal authority is an entity distinct from both the Commonwealth and a political subdivision; it is a "municipal corporation," *Commonwealth v. Erie Met. Transit Auth.*, 444 Pa. 345, 350, 281 A.2d 882, 885 (1971), and a redevelopment authority is similar to a housing authority[45] which, as a municipal corporation, was, prior

---

45. The Housing Authorities Law, supra n. 33, §1, *et seq.*, 35 P.S. §1541 *et seq.* (1964) [herein HA] and the Urban Redevelopment Law, supra n. 24 [herein UR] are substantially identical in pertinent respects. *Compare* HA §1542 *with* UR §1702; HA §1543 *with* UR §1703; HA §1544 *with* UR §1704; HA §1545 *with* UR §1705; HA §1546 *with* UR §1706; HA §1547 *with* UR §1707;

to *Ayala,* liable for negligence in proprietary functions. *Hill v. Allentown Housing Auth.,* 373 Pa. 92, 95 A.2d 519 (1953) (citing only cases involving immunity of municipal government). The Redevelopment Authority is also similar to a parking authority[46] which in an eminent domain case similar to *Anderson,* supra, has been held in contradistinction to the Port Authority, liable for consequential damages in the same manner as municipalities. *Peterson v. Pittsburgh Public Parking Auth.,* 383 Pa. 383, 119 A.2d 79 (1956).

Our Supreme Court has repeatedly urged the legislature to undertake a comprehensive review of the immunity question. *See e.g., Brown,* supra at 571 n. 6, 305 A.2d at 870 n. 6. Without such review the courts will be compelled to continue refining the nature of immunity on a piecemeal case-by-case basis such as this. We hold that the Redevelopment Authority, by all indicia of substance rather than form, is not cloaked with the Commonwealth's garments of sovereign immunity, and that it must stand in court to defend the plaintiff's claim.[47]

Judgment reversed.

---

HA §1548 *with* UR §1708; HA §1550 *with* UR §1709; HA §1555 *with* UR §1712; HA §1557 *with* UR §1713; HA §1558 *with* UR §1714; HA §1559 *with* UR §1715; HA §1560 *with* UR §1716; HA §1561 *with* UR §1717; HA §1562 *with* UR §1718.

46. The Parking Authority Law, supra n. 35, §1 *et seq.,* 53 P.S. §341 *et seq.* (1974) [herein PA] "created" parking authorities which could only become operative by proper resolution of the local governing body, *compare* PA §344(a) *with* UR §1704(b); provided for appointment of members by the head of the local governing unit, *compare* PA §348(a) *with* UR §1705; and provided for a power of eminent domain coextensive with that of municipalities. *Compare* PA §349 *with* UR §1712.

47. *Ayala.*